St. Louis, Iron Mountain & Southern Railway Company
v. State.

Opinion delivered February 10, 1908.

1. Interstate commerce—Validity of statute requiring trains to stop.—Where a railroad company has provided adequate and reasonable facilities for the accommodation of travel to and from a certain place, an attempt, by the Legislature, to require it to stop another train engaged in interstate commerce amounts to a regulation of interstate commerce, and is void. (Page 206.)

2. Same—Adequate facilities defined.—The term "adequate and reasonable facilities" is not capable of exact definition, is a relative expression, and calls for such facilities as may be fairly demanded, regard being had to the size of the place, the extent of the demand

for transportation, the cost of furnishing the additional accommodations asked for, and to all other facts which would have a bearing upon the question of convenience and cost.  (Page 288.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; reversed.

*Tom M. Mehaffy* and *J. E. Williams,* for appellant.

1.   The act requiring all trains to stop at Arkadelphia is in conflict with the Interstate Commerce Act, and is therefore void.  Art. 1, § 8, Const. U. S.; art. 6, § 11, *Id.;* 63 L. R. A. 213; 34 L. R. A. 105; 163 U. S. 166; 203 U. S. 335; *Id.* 209.

2.   Where a railroad has provided reasonable and adequate facilities for the accommodation of a particular locality, it cannot be required to stop its fast through trains at that point.  20 Railroad Rep. 745.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* assistant, for appellee.

It is admitted that, if adequate facilities had been provided to meet the requirements of the community, the Legislature would be powerless to compel the train in question to stop; but the proof shows that sufficient train service had not otherwise been provided.  The act is therefore a lawful exercise of State power.

McCULLOCH, J.  Appellant railway company was arraigned before a justice of the peace in Clark County in twenty-two cases, charging it with violation of a statute approved April 11, 1907, requiring it to stop all passenger trains, except one called the "Mexico Special," at Arkadelphia, a station on its line of road, a sufficient time to receive and discharge passengers, and making the failure to do so a misdemeanor, punishable by fine.  The information upon which appellant was arraigned charged failure on different dates, set forth in each case, to stop train No. 4, which was a northbound passenger train scheduled to pass Arkadelphia daily at 6:18 o'clock A. M.  A fine was assessed against appellant in each of the cases, and appeal was taken to the circuit court, where the cases were, by order of the court, consolidated; and upon trial there a fine of $100 in each case was assessed.

Appellant questions the validity of the statute, in so far as it requires the stopping of this train, on the ground that it is an

attempted regulation of interstate commerce. The evidence in the case is undisputed. It appears therefrom that there are eight daily trains carrying passengers on appellant's road which stop at Arkadelphia. The schedule at Arkadelphia for the northbound trains which stop there is as follows:

No. 24, at 9 :26 A. M.

No. 806, at 5 :22 P. M.

No. 6, at 6 :10 P. M.

No. 202, at 11 :48 P. M.

No. 98, a local freight, carrying passengers, at 3 :10 P. M.

It also appears that train No. 4, which is known as "the Mexico-California Limited," is a through passenger and mail train, carrying passengers and mail from Mexico and Western points to St. Louis and beyond, and does the work of the Mexico Special, which is run only in the winter season, and had been discontinued at the time covered by the accusations in this case; that 95 per cent. of its patronage is through travel; that it is a fast train, running in competition with trains of several other roads, and that it requires a faster schedule than local trains in order to get the passengers to St. Louis in time to make connections and to compete with the other lines; that it would be impossible to compete with the other lines if the train was required to stop at Arkadelphia and other places; that it has close connections to make with other trains at each end of the line, which would be seriously interfered with if the train was required to make the stops required by this statute. Of the three regular northbound passenger trains which stop at Arkadelphia, one is a fast through train to St. Louis, another is a through train to Memphis and connecting at Little Rock with a train to St. Louis, and the other is a local train to Little Rock, affording connections there, after three hours' layover, with other trains to St. Louis.

It also appears, from the evidence introduced on the part of the State, that the estimated population of Arkadelphia is about 4,500, and that there are two colleges there with large enrollments, with patronage from this and adjoining States.

The Supreme Court of the United States in a recent case passed upon the question of the power of States to regulate interstate commerce by requiring the stopping of trains. *Atl.*

*Coast Line Rd. Co.* v. *Wharton,* 207 U. S. 328. We are, of course, bound by the decision, as that court is the final arbiter of such questions; and the only question for us to determine is whether or not the facts of the present case bring it within that decision. In that case the court had under consideration an order of the Railroad Commission of the State of South Carolina requiring the railroad company to stop a through train at the town of Latta, South Carolina. It appeared from the evidence in that case that Latta was a town of less than 1,000 inhabitants, and that eleven other daily trains were provided which stopped at that place. The court held that the order of the Railroad Commission was in effect a regulation of interstate commerce, and therefore invalid. In the opinion delivered by Mr. Justice Peckham, it was said:

"That any exercise of State authority, in whatever form manifested, which directly regulates interstate commerce is repugnant to the commerce clause of the Constitution, is obvious. It hence arises that any command of a State, whether made directly or through the instrumentality of a railroad commission, which orders, or the necessary effect of which is to order, the stopping of an interstate train at a named station or stations, if it directly regulates interstate commerce, is void.

"It has been decided, however, that some orders which may cause the stoppage of interstate trains made by State authority may be valid if they do not directly regulate such commerce. *Lake Shore & M. S. Ry. Co.* v. *Ohio,* 173 U. S. 285. When, therefore, an order made under State authority to stop an interstate train is assailed because of its repugnancy to the interstate commerce clause, the question whether such order is void as a direct regulation of such commerce may be tested by considering the nature of the order, the character of the interstate commerce train to which it applies, and its necessary and direct effect upon the operation of such train. But the effect of the order as a direct regulation of interstate commerce may also be tested by considering the adequacy of the local facilities existing at the station or stations at which the interstate commerce train has been commanded to stop."

It will be observed that the effect of this decision is to hold that any order or regulation by a State which requires the stop-

page at a given station of a train engaged in interstate commerce, where reasonable and adequate facilities are otherwise provided at that place by other trains, is a direct attempt to regulate interstate commerce, and is void. The court in that case said further:

"The term 'adequate or reasonable facilities' is not in its nature capable of exact definition. It is. a relative expression, and has to be considered as calling for such facilities as might be fairly demanded, regard being had, among other things, to the size of the place, the extent of the demand for transportation, the cost of furnishing the additional accommodations asked for, and to all other facts which would have a bearing upon the question of convenience and cost."

It follows from this that if the appellant company has, by the four trains each way which stop at Arkadelphia, provided adequate and reasonable facilities for the accommodation of travel to and from that place, an attempt to require it to stop another train, engaged in interstate commerce, amounts to a regulation of interstate commerce, and is void. The only question therefore which we have to decide in determining the validity of this statute is, whether or not adequate and reasonable facilities have been provided.

We conclude from a consideration of the undisputed evidence in this case that reasonable facilities are provided without the stoppage of this train. It is not a question whether all the facilities desired by the inhabitants are furnished, but whether the facilities are reasonable, considering the fair and reasonable demands of the traveling public at that place.

The principal reason urged as to the inadequacy of the facilities provided by the railroad company is that the only through train to St. Louis which stops at Arkadelphia reaches stations in this State north of Little Rock at an unreasonable hour in the night time for passengers to debark; and that a through northbound train should be provided which will land passengers from Arkadelphia at those stations at a more reasonable hour. It is also earnestly argued that, as Arkadelphia is the county seat of Clark County, and as circuit court, when in session, usually convenes at 8:30 o'clock A. M., this train by which litigants and witnesses living south of that place could

reach there at 6:18 A. M., ought to be required to stop there for their convenience, instead of requiring them to wait for train No. 24, due to reach Arkadelphia at 9:26 A. M.

Now, it will be admitted that there is, at best, some inconvenience which must attend the traveler. A perfect system of railroad transportation, whereby the traveler can begin his journey at an hour which precisely suits his own convenience, progress with due speed and arrive at his destination, wherever that may be, at a reasonable hour of the day, is scarcely to be expected, however much it is to be desired. That would be Utopian. A train schedule could not be arranged so as to begin and end every journey in the day time. What the State may demand of a railroad company for the benefit of the people is reasonable service—facilities which are as near perfect as may reasonably be furnished, considering all the circumstances.

As said by the court in the quotation just made, the term "reasonable facilities" is a relative one, and must be determined by the facts concerning the requirements of travel at the place named. To require a through train to stop at that place and other places situated as it is would be to prevent it being what it is intended to be, a through fast train. If the Legislature can require this train to stop there, it could also require it to stop at all other places under the same circumstances, and the purpose for which the train is designed would thus be frustrated.

We are unable to distinguish any controlling difference between the facts of the present case and those in the case considered by the Supreme Court of the United States; and we must therefore hold, under the doctrine of that case, that the statute is void, so far as it effects the running of this train.

Judgment is therefore reversed, and the cause dismissed.