## MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS ET AL. *v.* STATE OF TEXAS.

### ERROR TO THE COURT OF CIVIL APPEALS, THIRD SUPREME JUDICIAL DISTRICT, OF THE STATE OF TEXAS.

No. 113.   Submitted January 2, 1918.—Decided January 14, 1918.

Where, in regular course, a passenger train is moved by one company from one State to a point in another and is there taken charge of and carried to destination by a second company, local to the second State, it is manifestly erroneous to hold that its interstate character is lost because the second company employs new crews and engines and cannot go beyond the state line.

An order of the Texas Railroad Commission requiring passenger trains in the State to leave stations on advertised schedule time, and allowing them no more than 30 minutes at origin or points of junction to make connection with trains of other lines, or 10 minutes more if at the end of the 30 minutes the connecting trains are in sight, is an unjustifiable interference with interstate commerce as applied to a local railroad company in respect of an interstate train which, under contract, the company receives at a point within the state line from a connecting company, and forwards (in sections) to its destinations within the State. The infliction of penalties upon the local corporation, under the local law, for failure to comply with the order, is beyond the power of the state courts in such a case. So *held* where, though the trial court found otherwise, the decisions of the intermediate and supreme courts of the State assumed that there was sufficient accommodation for local traffic independent of the through train in question—an assumption which this court adopts; and where the train was received too late to comply.

The suggestion that the order could have been complied with by running an extra train locally, if the interstate train was not on time, is impractical, and also inadequate in form, since, having exercised its right to advertise the latter train, the company could not escape liability for delay of that train by operating another.

The powers of a State over the local business of a local railroad company do not authorize the imposition of serious, unwarranted and unjust burdens in respect of its interstate trains.

167 S. W. Rep. 822, reversed.

THE case is stated in the opinion.

*Mr. Alexander H. McKnight, Mr. C. S. Burg, Mr. Joseph M. Bryson, Mr. Alex. Britton* and *Mr. Charles C. Huff* for plaintiffs in error.

*Mr. B. F. Looney,* Attorney General of the State of Texas, and *Mr. Luther Nickels,* Assistant Attorney General of the State of Texas, for defendant in error:

The order is calculated merely to promote convenience of the traveling public in Texas.  The trains affected are not used "exclusively for interstate traffic" as in *Cleveland, C., C. & St. L. Ry. Co.* v. *Illinois,* 177 U. S. 514; the order does not interfere with their operation before they reach the state line.  Even if it did affect their operation in other States, it would be to prevent delay—to aid commerce. Conformity to established and publicly advertised schedules substantially promotes the convenience of the traveling public.  *Atlantic Coast Line* v. *North Carolina Corp. Comm.,* 206 U. S. 1, 22.

Admitting that the order incidentally affects interstate commerce, it is within the class of reasonable state police regulations, in the interest of the safety, good order, convenience and comfort of passengers and the public, which are not in themselves regulations of interstate commerce.  *Gladson* v. *Minnesota,* 166 U. S. 427; *Atlantic Coast Line* v. *North Carolina Corp. Comm., supra.*  Such regulations, being in "aid" of interstate commerce, are valid.  *Lake Shore & Michigan So. Ry. Co.* v. *Ohio,* 173 U. S. 285; *Mobile County* v. *Kimball County,* 102 U. S. 691.

The running of substitute trains when the regular trains are late (not required by the order but merely an alternative method whereby the carrier may comply with it) would not result in discrimination against interstate passengers, for the regular train, when it arrived, would

necessarily continue its trip south. Nor would the cost
of running such trains result in a burden on interstate
commerce. The effect, if any, is remote, indirect and in-
cidental. So with respect to the imposition of penalties
for violations of the order. The penalties, like ordinary
*ad valorem* tax levies upon the physical property lo-
cated in the State, may *ultimately* result in an increased
burdening of commerce, but this is not a regulation
of it.

The order does not deprive the carrier of its property
without due process of law. The evidence and the findings
of the state courts show that the facilities available for
intrastate traffic, other than trains Nos. 9 and 209, were
wholly inadequate. Extra trains could be required under
the state law. *Gulf, C. & S. F. Ry. Co.* v. *State*, 169 S. W.
Rep. 385. Since the running of extra trains is due en-
tirely to the voluntary acts of the carrier, no federal ques-
tion arises under the Fourteenth Amendment. In this
respect the case differs from *Atlantic Coast Line* v. *North
Carolina Corporation Comm.*, 206 U. S. 1, where the run-
ning of an extra train was treated by the Corporation
Commission and the state courts as the most direct and
efficient means of complying with the order. Even if a
federal question does arise, in this feature of the case,
the invalidating facts are not proved. It was neither
alleged nor proved that the running of the extra trains
would entail a pecuniary loss either with respect to the
particular facility or the general revenues of the company.
The record negatives any idea of a loss. Notwithstanding
the Corporation Commission and the state courts in
*Atlantic Coast Line* v. *North Carolina Corp. Comm.*, *supra*,
assumed that the operation of the train there in question
would produce a loss, this court sustained the order. And
that case is decisive against the plaintiff in error here.
See also *Missouri Pacific Ry. Co.* v. *Kansas*, 216 U. S. 262,
277 *et seq.*

Mr. Justice Holmes delivered the opinion of the court.

This is a suit brought by the State of Texas to recover penalites for violation of an order of the State Railroad Commission. This order required passenger trains in Texas to start from their point of origin and from stations on the line in accordance with advertised schedule, allowing them not exceeding thirty minutes at origin or points of junction with other lines to make connection with trains on such other lines, and not exceeding ten minutes more if at the end of the thirty minutes the connecting trains were in sight. There were some other qualifications not necessary to be stated. The defendant's passenger trains concerned were numbers 9 and 209, and were parts of a train, also numbered 9, of the Missouri, Kansas & Texas Railway, a different corporation, taken charge of by the defendant at Denison, Texas, about five miles south of the Texas and Oklahoma state line, under a contract with the Missouri, Kansas & Texas. In pursuance of this contract they were forwarded via Dallas and Fort Worth to Hillsboro, thence as one train to Granger and there again divided, the two parts going respectively to Galveston and San Antonio. There were similar arrangements for trains to the north. The cars received by the defendant came from St. Louis and Kansas City, Missouri, uniting at Parsons, Kansas, and thence proceeding south to Denison. The Court of Civil Appeals at first held that the movement must be regarded as a continuous one from Kansas City and St. Louis, and that the order did not apply to the train; but on a rehearing decided that as the defendant took control at Denison with new crews and engines, and as the defendant could not go beyond the state line, the movement so far as the defendant was concerned was wholly within the State. Breaches of the order having been proved, it affirmed a judgment imposing

a fine. A writ of error was refused by the Supreme Court of the State.

The Supreme Court gave up the manifestly untenable ground taken by the Court of Civil Appeals and recognized that the defendant's trains were instruments of commerce among the States, but it construed the order as applying to them none the less and held it valid as so applied. The only question with which we have to deal is whether the State Commission could intermeddle in this way, especially when there was sufficient accommodation for local traffic independent of the through trains. The defendant in error attempts to open this last matter, because the opinion of the Court of Civil Appeals in which the fact was stated was reversed by it for a different reason, and that of the court of first instance was the other way. But we regard the decision of the intermediate and the Supreme Court as proceeding upon the assumption that we have stated and that we see no reason to disturb. Again, the question is not what the State Commission might require of a road deriving its powers from the State, with regard to local business, *Missouri Pacific Ry. Co.* v. *Kansas*, 216 U. S. 262, 283, but whether the order if applied to this case would not unlawfully interfere with commerce among the States.

On its face the order as applied was an interference with such commerce. It undertook to fix the time allowed for stops in the course of interstate transit. It was a serious interference, for it made the defendant liable for an interstate train not starting on schedule time, when the train did not come into the defendant's hands, from another company in another State, until too late. This, as we understand the facts, was the train to which the advertised schedule applied, and if so, the mere statement of the result is enough to show that the burden imposed not only was serious but was unwarranted as well as unjust. The suggestion that compliance with the order

could have been secured by having an extra train ready to run if the regular one was not on time hardly is practical, and is not an adequate answer, even in form.   For the defendant advertised, or at least had the right to advertise, the interstate train, and, if it did so, would not free itself from liability for a delay on the part of that train by offering another.   We think it plain that this order was applied in a way that was beyond the power of the Commission and courts of the State.   *Seaboard Air Line Ry.* v. *Blackwell,* 244 U. S. 310.   *Chicago, Burlington & Quincy R. R. Co.* v. *Railroad Commission of Wisconsin,* 237 U. S. 220, 226.   *South Covington & Cincinnati Street Ry. Co.* v. *Covington,* 235 U. S. 537, 548.

*Judgment reversed.*