No. 25,281.

THE STATE OF KANSAS, ex rel. THE PUBLIC UTILITIES COMMISSION, and C. B. GRIFFITH, Attorney-general, *Plaintiffs*, v. THE MISSOURI, KANSAS & TEXAS RAILROAD COMPANY, *Defendant.*

### SYLLABUS BY THE COURT.

MANDAMUS—*Action to Compel Enforcement of Order of Public Utilities Commission Requiring Railroad to Stop Certain Interstate Trains at Certain Railroad Stations—Evidence Shows Adequate Transportation Facilities at Present—Order an Unconstitutional Interference With Interstate Trains and With Interstate Commerce and With Rights of Railroad Company, and Therefore Void.* An order of the public utilities commission requiring a railroad company to stop a fast passenger and mail interstate train at a station having little business, where the people in and tributary to the station had already been provided with reasonable and adequate transportation facilities, and where compliance with the order would seriously interfere with the business of the fast interstate train, is an unconstitutional interference with interstate commerce and with the rights of the railroad company and is therefore void.

Original proceeding in mandamus. Opinion filed November 8, 1924. Writ denied.

*Charles B. Griffith*, attorney-general, *Fred S. Jackson*, of Topeka, and *Maurice Murphy*, of St. Marys, for the plaintiffs.

*W. W. Brown*, and *Alfred G. Armstrong*, both of Parsons, for the defendant.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a proceeding in mandamus to compel the enforcement of an order of the public utilities commission requiring the railroad company to stop train No. 22 on flag at Kincaid, Kan., to discharge passengers from Parsons and points south and pick up passengers for points to Paola and points north. This order was made on July 26, 1923. It has not been enforced and this proceeding was brought to compel enforcement. Kincaid is on the main line of the Missouri, Kansas & Texas railroad, running from Parsons to Kansas City. At the last United States census it had a population of 443 and is said to have about 500 at the present time, but it is claimed that the train would serve the near-by towns of Blue Mound, Lone Elm and surrounding country, so that 1,500 people would be accommodated by the operation of the train.

Several citizens of Kincaid applied to the commission to stop trains Nos. 22 and 23, one of which goes north to Kansas City and

the other south to Texas points, but the order made only applied to No. 22, and there was a finding that public convenience did not require the stopping of train No. 23. The trains going north which do stop at Kincaid are No. 30, which leaves Kincaid at 9:35 p. m., reaching Kansas City at 12:25 a. m., and No. 24, leaving Kincaid at 9:38 a. m., arriving in Kansas City at 12:30 p. m.; and there is a freight train No. 98, carrying passengers, which stops at Kincaid, leaving there at 11:35 a. m. and arriving at Paola at 2:30 p. m. Going south there are three trains which stop for passengers at Kincaid, one at 12:40 a. m., one at 1:25 p. m. and another at 9 a. m. The passenger trains going through Kincaid in the evening and early morning hours carry Pullman accommodations, and No. 30, which carries a Pullman, is parked at Kansas City until 7:30 a. m., which passengers are permitted to occupy up to that time. Trains No. 22 and 23 are the fast through interstate trains of the railroad company between Kansas City and Dallas, Fort Worth and San Antonio, Tex. The train going south from Kansas City connects with a like fast train from St. Louis at Parsons, and then proceeds through Oklahoma and Texas, connecting with other fast trains in those states. These trains carry United States mail and interstate express and are run on a special fast schedule in competition with trains of other railroad companies between the terminal points named.

The plaintiff contends that the local conditions at Kincaid and the convenience of the people there required the service of another train, and therefore that the order of the public utilities commission is fair, just and reasonable.

On the other hand, the defendant contends that the testimony shows beyond dispute that the people of Kincaid and tributary territory are already furnished with adequate and reasonable passenger service, and that the order compelling the fast interstate mail and passenger train to stop at Kincaid is a direct burden and an unconstitutional interference with interstate commerce and with the transportation of the mails.

It is conceded to be within the power of the state to require a railroad company to provide adequate facilities for the accommodation of the public at a given point, and it is likewise conceded that the company cannot be required to stop fast interstate mail trains where adequate service for the community has been otherwise provided and where the stoppage of such fast trains would be an undue inter-

ference with interstate commerce. The extent of state control of interstate traffic was before the supreme court of the United States, and the rule was succinctly stated in *Chi., B. & Q. Ry. v. Wisconsin R. R. Com.*, 237 U. S. 220, 226, where it was said:

"(1) It is competent for a state to require adequate local facilities, even to the stoppage of interstate trains or the rearrangement of their schedules.

"(2) Such facilities existing—that is, the local conditions being adequately met—the obligation of the railroad is performed, and the stoppage of interstate trains becomes an improper and illegal interference with interstate commerce.

"(3) And (this, whether the interference be directly by the legislature or by its command through the orders of an administrative body."

It may be said that there is little if any dispute as to the controlling facts of the case. It appears that the people of Kincaid are quite well provided with passenger service. There are persons outside of the town who might use the added service, and it is said that the town of Blue Mound and Lone Elm would also be accommodated, but it is shown that these towns are situated on the railroad of another company and not on that of the defendant. No inquiry can be had as to the facilities furnished them by the other company. It is clear that there are many towns in the state having a larger population and a greater traffic than Kincaid which are not so well provided with transportation facilities. There are two through trains to Kansas City every twenty-four hours, and the mixed train, which carries passengers as far north as Paola, where connections can be made with other railroads. Some of the testimony tended to show that if trains arrived and left Kincaid at earlier or later hours, it would be more convenient for certain citizens who make occasional trips to Kansas City, Mo., and desire to return the same day, but it appears that the passenger traffic from that place to Kincaid is very light. There is testimony that the traffic there is an average during the year of three passengers per train per day. A witness testified that if the fast trains stopped there would be from five to eight passengers a day. A schedule that would accommodate one traveler might be untimely as to another, and it would not be practicable to put on sufficient number of trains to suit the convenience of each traveler. It has been said that—

"A perfect system of railroad transportation, whereby the traveler can begin his journey at an hour which precisely suits his own convenience, progress with due speed and arrive at his destination, wherever that may be, at a reasonable hour of the day, is scarcely to be expected, however much it is to be

The State, *ex rel.*, v. Railroad Co.

desired. That would be Utopian. A train schedule could not be arranged so as to begin and end every journey in the daytime." (*St. Louis, I. M. & S. Ry. Co. v. State,* 85 Ark. 284, 289.)

In view of the number of trains provided which carry passengers to and from Kincaid, it must be held that adequate transportation facilities are already provided.

It has been shown that trains Nos. 22 and 23 which run through four states are fast mail, express and passenger trains, and that to make additional stops would prevent the making of schedule time. The public, as all know, demands speed in transportation, and competition with other railroads in the carrying of mails and passengers demands that fast through trains be run. The trains mentioned are the only through fast trains on this line, and it was shown that if stops were made at places like Kincaid it would convert them into local trains and occasion the loss of the through traffic which they were designed and scheduled to carry, and destroy their usefulness. Obviously such a requirement would make it impossible for the company to provide the public with reasonably speedy transportation, and render it unable to compete with its rivals in carrying interstate passengers, mail and express. Having already provided the community with adequate facilities, it follows that the obligation of the defendant to the locality has been performed, and that the order requiring the stoppage of the train is an unconstitutional interference with interstate commerce and with the rights of the defendant. Under the decisions of the federal supreme court the order sought to be enforced must be held invalid. A few of the supporting authorities are: *Cleveland, etc., Ry. Co. v. Illinois,* 177 U. S. 514; *Miss. R. R. Com. v. Ill. Cent. R. R.,* 203 U. S. 335; *Atl. Coast Line v. Wharton,* 207 U. S. 328; *Herndon v. Chi., R. I. & P. R. Co.,* 218 U. S. 135; *Chi., B. & Q. Ry. v. Wisconsin R. R. Com.,* 237 U. S. 220; *Missouri, K. & T. R. Co. v. Texas,* 245 U. S. 484. See, also, *The State, ex rel., v. Railway Co.,* 101 Kan. 660, 168 Pac. 838.

The writ is denied.