## SOUTHERN PAC. CO. v. MASHBURN, Atty. Gen. of Nevada.

### No. H-143.

District Court, D. Nevada.

Feb. 23, 1937.

Henley C. Booth and Burton Mason, both of San Francisco, Cal., and Brown & Belford, of Reno, Nev., for plaintiff.

Gray Mashburn, Atty. Gen., and W. T. Mathews and Howard Gray, Deputy Attys. Gen., for defendant.

Before MATHEWS, Circuit Judge, and LOUDERBACK and NORCROSS, District Judges.

## PER CURIAM.

This is a suit in equity to enjoin the enforcement of a statute enacted by the Legislature of the state of Nevada and approved March 11, 1935 (Statutes of Nevada, 1935, p. 32, c. 26), entitled: "An Act to promote the public safety and the safety of travelers upon railroads and the safety of railroad employees by limiting the number of cars that may be operated in trains operated on railroads in the State of Nevada; providing a penalty for the violation thereof and for the recovery of such penalty by suit; providing certain exceptions in the act; and other matters properly connected therewith."

Briefly, the act makes it unlawful to operate trains having in excess of seventy cars besides a caboose.

Upon hearing, a temporary injunction was issued pending final determination of the case. The case has been finally submitted upon objections filed by defendant to the report of the special master appointed to take the testimony and report proposed findings of fact and conclusions of law.

The report of the special master is voluminous and covers evidence taken in respect to experience as regards hazards of a number of the principal railroad systems in the United States in addition to that of defendant. It also covers the cost to defendant to remodel its system to comply with the law, such cost being approximately $350,000 in addition to an increased annual expense in excess of $500,-000.

It is conceded that a state is without power to interfere in matters affecting interstate commerce except as the health or lives of its citizens may require.

The main reliance of the defendant that the act in question is within the proper purview of state legislation is that a greater hazard exists in the operation of trains in excess of seventy cars than exists in trains of that number or less. That certain hazards, particularly what is referred to as slack hazard, increases with the number of cars in a train, is established without serious question. If the question of hazard was to be determined solely upon the basis of accidents with attendant injuries occurring upon trains of cars in excess of the statutory limit, the answer would unquestionably be that hazard increased with the length of train. Many other elements, however, enter into the problem, the principal one being the volume of freight to be moved to and from points in California and Utah. From the special masters "Summary of the Evidence" we quote:

"Expanding to a full year's operation the traffic moved for this two months' period it will be observed that for 1934 there would have been involved 5,793,725 thousand gross-ton miles. To move this total traffic in obedience with the provisions of the Train Limit Law would require 5,150 additional freight trains than those actually used in handling such traffic. These freight trains would have traveled 556,897 additional freight train miles.

**394**

Of this total additional freight train miles thus accruing 488,388 would be allocated to Nevada operation and 68,509 to extra-territorial operation."

 The special master's proposed finding on "Effect of Law as Safety Measure" is as follows:

"The operation of plaintiff's railroad on Nevada line under the law by restricting the number of car units in trains would reduce the amount of potential slack that exists between coupled cars of a freight train, thereby effecting one of the factors that contributes to the severity of slack action accidents; it would make the work of inspecting and supervising freight trains while in motion less arduous; by reducing the number of car units in a train the law would reduce the potential hazards arising from defects in car equipment as to individual freight trains operated but this hazard would not be eliminated by short trains when the total volume of freight traffic to be transported is considered. The benefits thus accruing by the law's operation would be substantially more than offset by an increased number of accidents and casualties from other causes that would follow the limitation of car units in freight trains to handle the same volume of freight traffic that can be and is efficiently handled without such limitation.

"The frequency of train and train service accidents is directly related to the number of train units operated and when more train units are run than are necessary to handle a given amount of traffic the hazard of accidents in handling such traffic is correspondingly increased.

"The limiting of freight trains on plaintiff's Nevada line to not more than 70 cars will result in compelling plaintiff to operate substantially more freight trains to carry a given volume of freight traffic than it would operate under the long train method. Based upon the 1934 traffic volume if the same had been transported under the law's restrictions it would have required 5,150 additional freight trains or an increase of 32.8 percent in the number of freight trains that were actually operated to move this traffic and the additional number of train meets and passings would have been approximately 8,500.

"The operation of such additional number of trains would require a greater number of telegraphic and telephonic train orders and would increase the hazard of train and train service accidents resulting from misunderstanding or forgetfulness of train orders. The additional number of trains would increase the number of employees and thereby increase the hazard of casualties that are related to the number of train units operated. Such additional trains would increase accidents and casualties in yards, accidents to section men, signal maintainers, grade crossing accidents, head end and rear end collisions. The additional number of locomotives required to operate additional trains would increase the hazard of accidents or casualties that is related to the number of locomotives operated.

"A careful review of all the evidence warrants the conclusion that from the standpoint of safety to the public; to travelers on railroads; and to railroad employes, the Nevada Train Limit Law bears no reasonable relation to safety but if enforced would impair and lessen the safety of plaintiff's present method of freight train operation in Nevada."

The court approves and adopts the findings of fact and conclusions of law submitted for consideration by the special master. Defendant's exceptions to certain of the findings of fact so submitted are overruled.

Plaintiff is entitled to a decree granting a permanent injunction as prayed for. Atchison, T. & S. F. Ry. Co. v. La Prade (D.C.) 2 F.Supp. 855. Decree will be entered accordingly.