**MISSOURI–KANSAS–TEXAS R. CO. v. WILLIAMSON, Attorney General of Oklahoma.**

**No. 1973.**

District Court, W. D. Oklahoma.

Jan. 11, 1941.

M. D. Green and Frank G. Anderson, both of Oklahoma City, Okl. (Rainey, Flynn, Green & Anderson, Cruce, Satterfield & Grigsby, and Bleakmore, Barry, Farmer & Lee, all of Oklahoma City, Okl., O. E. Swan, of Muskogee, Okl., and Thomas B. Pryor, W. L. Curtis, and Joseph R. Brown, all of Fort Smith, Ark., of counsel), for plaintiff.

Mac Q. Williamson, Atty. Gen. of Oklahoma, F. M. Dudley, Asst. Atty. Gen., and J. A. Rinehart, Sp. Counsel, of El Reno, Okl., for defendant.

Before BRATTON and MURRAH, Circuit Judges, and VAUGHT, District Judge.

BRATTON, Circuit Judge.

The validity of article 2, chapter 63, Laws of Oklahoma 1937, 66 Okl.St.Ann. §§ 102, 103, is challenged on the ground that it violates the Commerce Clause, art. 1, § 8, cl. 3, and the Fourteenth Amendment to the Constitution of the United States, and infringes certain acts of Congress relating to interstate commerce. The statute is entitled, "An Act to promote the safety of employees and travelers upon railroads by compelling common carriers by railroad to limit the length of freight trains; and providing a penalty for the violation of this Act." Section 1 forbids the operation of a freight train within the state consisting of more than seventy cars, exclusive of caboose; and, with an exception not material here, section 2 provides that each train operated in violation of the act shall constitute a separate offense, fixes a penalty of not less than $100 nor more than $500, and makes it the duty of the Attorney General to prosecute violations. The attack comes in this suit by Missouri-Kansas-Texas Railroad Company against Mac Q. Williamson, Attorney General of Oklahoma, to enjoin the taking of any action to enforce or attempt to enforce the statute, or from instituting against plaintiff any criminal or civil action or proceeding for failure or refusal to observe, obey or comply with its provisions. A restraining order was issued; defendant answered, admitting certain allegations contained in the complaint and denying others, pleading the validity of the act, and alleging that the suit is one against the state, in violation of the Eleventh Amendment to the Constitution of the United States; and after certain postponements by agreement of the parties, the cause was submitted to this court, specially convened in accordance with section 266 of the Judicial Code, 28 U.S.C.A. § 380, on the question whether a temporary injunction shall be granted. The evidence adduced at the hearing—consisting of affidavits, and data to which reference is made in certain of such affidavits—fills almost nine hundred pages of printed record, and the questions presented have been ably and exhaustively briefed.

The questions to which our attention is first directed relate to the jurisdiction of the court. Plaintiff is a corporation organized under the laws of Missouri, and defendant is a resident and citizen of Oklahoma. In order to comply with the provisions of the statute, plaintiff would require four additional engines on its main line, two additional engines on other lines, six additional cabooses, and more train crews. The immediate increased out-of-pocket expense would exceed eighty thousand dollars annually, and it would be still larger with expansion of business. Plaintiff seeks in the suit to be relieved of the necessity of providing such additional equipment and the employment of such additional crews. The right asserted is to be relieved of the requirement to do so. That is the very essence of the action. And the value of that right may be measured by the loss which would be entailed by compliance with the act. Western & Atlantic Railroad v. Railroad Commission of Georgia, 261 U.S. 264, 43 S.Ct. 252, 67 L. Ed. 645; McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S. Ct. 780, 80 L.Ed. 1135. There is complete diversity of citizenship, and the amount in controversy far exceeds $3000.

Of course, a suit in equity will not lie where the plaintiff has a plain, adequate and complete remedy at law. But the remedy must be complete, practical and efficient. Ordinarily, resort may not be had to equity to restrain the institution and prosecution of criminal proceedings. But it is well settled that a court of equity will restrain the institution and prosecution of

such proceedings intended to enforce an unconstitutional enactment where its enforcement in that manner would invade the vested property rights of plaintiff. Davis & Farnum Manufacturing Co. v. Los Angeles, 189 U.S. 207, 217, 23 S.Ct. 498, 47 L.Ed. 778; Dobbins v. Los Angeles, 195 U.S. 223, 241, 25 S.Ct. 18, 49 L.Ed. 169; Ex parte Young, 209 U.S. 123, 161, 162, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Western Union Telegraph Co. v. Andrews, 216 U.S. 165, 30 S.Ct. 286, 54 L.Ed. 430; Philadelphia Co. v. Stimson, 223 U.S. 605, 620, 621, 32 S.Ct. 340, 56 L.Ed. 570; Truax v. Raich, 239 U.S. 33, 37, 38, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283; Adams v. Tanner, 244 U.S. 590, 37 S.Ct. 662, 61 L.Ed. 1336, L.R.A.1917F, 1163, Ann.Cas. 1917D, 973; Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255; Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596. The general rule forbidding the interposition of equity where a plain, adequate and complete remedy at law obtains does not oblige plaintiff to assume the hazard of multiplied criminal prosecutions and penal sanctions aggregating large sums in order finally to secure an adjudication of its rights in courts of law. Terrace v. Thompson, supra; Packard v. Banton, supra; Beal v. Missouri Pacific R. Corporation, 8 Cir., 108 F.2d 897.

The Eleventh Amendment to the Constitution of the United States provides that the judicial power of the United States shall not extend to any suit at law or in equity against a sovereign state by a citizen of another state. That immunity is without condition or limitation and places a state beyond the reach of the process of a United States court. But a suit against a state officer to restrain wrongful action under color of an unconstitutional statute, resulting in injury to the rights and property of plaintiff, is not a suit against the state, within the intent and meaning of the amendment. An officer is not immune in such circumstances from restraint. He may be enjoined, without impingement upon the amendment. Osborn v. Bank of United States, 9 Wheat. 738, 843, 868, 6 L.Ed. 204; Davis v. Gray, 16 Wall. 203, 220, 21 L.Ed. 447; Allen v. Baltimore & Ohio R. R. Co., 114 U.S. 311, 5 S.Ct. 925, 962, 29 L.Ed. 200; Pennoyer v. McConnaughy, 140 U.S. 1, 10, 11 S.Ct. 699, 35 L.Ed. 363; In re Tyler, 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689; Scott v. Donald, 165 U.S. 107, 112, 17 S.Ct. 262, 41 L.Ed. 648; Tindal v. Wesley, 167 U.S. 204, 220, 17 S.Ct. 770, 42 L.Ed. 137; Smyth v. Ames, 169 U.S. 466, 518, 519, 18 S.Ct. 418, 42 L.Ed. 819; Ex parte Young, supra; Philadelphia Company v. Stimson, supra; Shields v. Utah Idaho Central Railroad Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111. It is clear that the complaint states a cause of action in equity of which this court has jurisdiction.

It is contended with emphasis that the statute, applied to the business of plaintiff, is not a safety measure reasonably enacted in the exertion of the police power of the state, but is merely an attempt to regulate, delay and burden interstate commerce, in violation of the Commerce Clause. The supreme, plenary and complete power of Congress to regulate interstate commerce is without limitation or restriction, except that prescribed in the Constitution; and within the reach of that paramount authority lies the power to protect such commerce against substantial dangers, burdens or obstructions, no matter the source from which the encroachment springs. Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23; Minnesota Rate Cases (Simpson v. Shepard), 230 U.S. 352, 398, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A., N.S., 1151, Ann.Cas.1916A, 18; National Labor Relations Board v. Jones & Laughlin Corp., 301 U.S. 1, 36, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. Coming to apply that well recognized doctrine, many state and municipal enactments have been held invalid. Hall v. DeCuir, 95 U.S. 485, 24 L.Ed. 547; Covington & Cincinnati Bridge Co. v. Kentucky, 154 U.S. 204, 14 S.Ct. 1087, 38 L.Ed. 962; Minnesota Rate Cases, supra; Kansas City Southern Railway Co. v. Kaw Valley Drainage District, 233 U.S. 75, 34 S.Ct. 564, 58 L.Ed. 857; South Covington & Cincinnati Street Railway Co. v. City of Covington, 235 U.S. 537, 35 S.Ct. 158, 59 L.Ed. 350, L.R.A. 1915F, 792; Seaboard Air Line Railway v. Blackwell, 244 U.S. 310, 37 S.Ct. 640, 61 L.Ed. 1160, L.R.A.1917F, 1184; Missouri, Kansas & Texas Railway Co. v. Texas, 245 U.S. 484, 38 S.Ct. 178, 62 L.Ed. 419, L.R.A.1918C, 535.

But every state statute having some relation to interstate commerce is not to be condemned on that ground. A state is free in the exertion of its police power to enact reasonable measures in

612

the interest of the health, safety and welfare of its people, including employees of railroads, passengers on trains, and others, even though interstate commerce may be incidentally or indirectly involved. Sherlock v. Alling, Administrator, 93 U.S. 99, 23 L.Ed. 819; Minnesota Rate Cases, supra; South Covington & Cincinnati Street Railway Co. v. City of Covington, supra. Statutes making it a misdemeanor for an engineer to operate a train within the state without first undergoing an examination and obtaining a license, and providing for the forfeiture of such license, Smith v. Alabama, 124 U.S. 465, 8 S.Ct. 564, 31 L.Ed. 508; declaring that persons afflicted with color blindness and loss of visual power to the extent therein specified shall be disqualified to fill certain positions in the management and operation of trains, providing for a certificate of fitness, and fixing a penalty for its violation, Nashville, Chattanooga & St. Louis Railway v. Alabama, 128 U.S. 96, 9 S.Ct. 28, 32 L.Ed. 352; providing that it shall be unlawful to operate a freight train on Sunday, except in certain circumstances, and providing a penalty for its violation, Hennington v. Georgia, 163 U.S. 299, 16 S.Ct. 1086, 41 L.Ed. 166; regulating the heating of passenger cars, and providing a penalty for its violation, New York, New Haven & Hartford Railroad Co. v. New York, 165 U.S. 628, 17 S.Ct. 418, 41 L.Ed. 853; requiring a specified number of trains carrying passengers to stop daily at stations in cities and villages having a certain population long enough to receive and discharge passengers, and providing for the recovery of a penalty for its violation, Lake Shore & Michigan Southern Railway Co. v. Ohio, 173 U.S. 285, 19 S.Ct. 465, 43 L.Ed. 702; regulating the speed of trains through municipalities, and fixing a penalty for its violation, Erb v. Morasch, 177 U.S. 584, 20 S.Ct. 819, 44 L.Ed. 897; prescribing the minimum number of employees to be used in the operation of freight trains and providing a penalty for its violation, Chicago, Rock Island & Pacific Railway Co. v. Arkansas, 219 U.S. 453, 31 S.Ct. 275, 55 L.Ed. 290, Missouri Pacific Railroad Co. v. Norwood, 283 U.S. 249, 51 S.Ct. 458, 75 L.Ed. 1010; providing that a locomotive used on a main line after dark shall be equipped with a good and sufficient headlight which shall consume not less than three hundred watts at the arc, and with a reflector of not less than twenty-three inches in diameter, and fixing a penalty for its violation, Atlantic Coast Line Railroad Co. v. Georgia, 234 U.S. 280, 34 S.Ct. 829, 58 L.Ed. 1312; and specifying the minimum number of employees to be used in switching, pushing or transferring cars across public crossings in yards or terminals in cities, and providing a penalty for its violation, St. Louis, Iron Mountain & Southern Railway Co. v. Arkansas, 240 U.S. 518, 36 S.Ct. 443, 60 L.Ed. 776, have been sustained. It is crystal clear that the general principle running through all of these cases is that a state statute, enacted in the exercise of the police power, and bearing some reasonable relation to the health, safety, or well-being of the people of the state, is not to be overturned by judicial decree, even though by its necessary operation it affects interstate commerce in an incidental or indirect manner, but not otherwise.

If a statute which purports to have been enacted in the interest of public health or safety has no real relation to that object, or is an invasion of rights protected by the Constitution, it should be so adjudged and declared invalid. Hennington v. Georgia, supra. But a court is not concerned with the efficacy of such legislation if it bears some substantial relation to that object, and does not contravene any provision of the Constitution. New York, New Haven & Hartford Railroad Co. v. New York, supra. Its efficacy is a matter exclusively for the legislature. The legislature is familiar with local conditions, and is the judge of the necessity of such enactments. And even though a court may differ with the legislature in respect of a question of public policy, that fact does not afford any sustainable basis for judicial interference. McLean v. Arkansas, 211 U.S. 539, 547, 29 S.Ct. 206, 53 L.Ed. 315. Whether a statute, addressed to a question of police policy, and enacted within the permitted scope of legislative power, is wise or unwise, is based on sound economic theory or otherwise, or is the best means to achieve the desired result, are matters solely and exclusively for the judgment of the legislature. They are beyond the range of judicial inquiry.

The trend in practice among railroads throughout the country during the past twenty-five years or more has been in the direction of improved facilities, long-train operation, and faster and more dependable

schedules. As illustrating the results of such improved service, the fruit grower in California is three days nearer the eastern seaboard, two days nearer Chicago, and correspondingly · nearer other consuming areas; the citrus-fruit grower in Florida is two days nearer the heavy consuming centers along the eastern seaboard; and freight service between Chicago, St. Louis and New York has been quickened by two days, between St. Louis and centers in Texas by two days, between New Orleans and Cincinnati by one day, between Chicago and Omaha by one day, and between Pittsburg and New York by one day. Plaintiff has shared that practice. It has reduced grades, replaced lighter with heavier rails, provided some double trackage, strengthened bridges, replaced and renewed ballast, installed block signals, provided longer passing tracks, and acquired and rebuilt locomotives with greater hauling capacity, all in the interest of efficiency, economy, safety, and operation of long trains. With such improved facilities, it operates longer freight trains, a substantial part of them having more than seventy cars, it maintains faster and more dependable schedules, and its operating cost has been reduced. These changes and improvements in equipment and facilities were not essential except in carrying out the program of increased efficiency, long-train operation, and faster and more dependable schedules. Plaintiff's nearest terminal on the north where freight trains can be made up and broken up is at Parsons, Kansas, about twenty-seven miles north of the Oklahoma-Kansas state line; its nearest such terminal on the south is at Ray Yards, near Dennison, Texas, about six miles south of the Oklahoma-Texas state line; its nearest such terminal on its Parsons-Oklahoma City line is at Parsons, about thirty-one miles north of the Oklahoma-Kansas state line via that line of road; and its nearest such terminal on its northwestern line is at Wichita Falls, Texas, about sixteen miles south of the Oklahoma-Texas state line. Similar or adequate terminal facilities at the state lines would be necessary for the making up and breaking up of trains there, and they would entail large expenditures. In order to avoid the operation of trains of more than seventy cars plaintiff would be required either to provide facilities at the state lines or make up and break up its trains at the present terminals outside the state. It thus is manifest that some of the gains in operating cost heretofore accomplished would

be lost, and that plaintiff would be subjected to a very substantial increase in expenditures, if ·the statute is sustained and compliance with it is exacted.

Plaintiff's trains are equipped with modern and approved airbrakes, but the voluminous evidence presented is in hopeless conflict upon the question whether trains of more than seventy cars can be operated with safety by the use of such brakes. A detailed review of the evidence would unduly extend this opinion, and would not serve any useful purpose. It suffices to say that the evidence of plaintiff tends to show that a train of more than seventy cars can be operated safely by the use of airbrakes; that so-called slack action and resulting shock, particularly on the rear, is not appreciably greater on trains exceeding seventy cars than on those of less number; that the number of cars has little if anything to do with safety of operation through the use of such brakes; that the control of a long train, consisting of more than seventy cars, does not present any substantial danger of bucking, that ability to see from one end of a train to another in order to give and receive hand signals is not essential to safe operation; that the limitation of trains to seventy cars or less would necessarily increase the number of trains operated; and that the hazards to employees, to persons at crossings, and to others, necessarily growing out of operation, increase or decrease somewhat in proportion to the number of trains operated. But the evidence of defendant tends with greater strength to show that the severity of the shock caused by the application of airbrakes depends in part upon the length of the train; that the longer the train the more the slack, and the farther the caboose is from the engine or the break in the train where the air goes into emergency, the more severe is the shock and the greater is the possibility of injury to employees, caretakers of livestock, and others, riding in the caboose; that due to such hazard, employees riding in the caboose work under constant nervous strain, are constantly watchful, and sometimes sustain serious injury from shock; that the likelihood of broken archbars, fallen brake beams, stuck brakes resulting in slid wheels, overheated and broken wheels with consequent danger, is far greater on long trains than on short ones; that such dangerous and hazardous developments can be more easily and readily observed from the caboose on a short train that on one of more than

'seventy cars; that it is impossible to see effectively from one end to the other of a train of more than seventy cars, and therefore to give and receive signals by hand; and that the ability to give and receive such signals contributes to safety in operation. Statutes similar, if not identical, to this one have been enacted into law in Arizona, Louisiana, and Nevada; similar measures have been introduced from time to time in the legislatures of other states and efforts exerted to secure their enactment into law; and it is an historical fact of which we can take notice that safety has been the basis on which the enactment of such legislation has been so widely urged by railroad employees engaged in the operation of trains, thus indicating the widespread belief among those with experience that the length of trains has relation to safety of operation. In view of all the facts and circumstances disclosed, it was within the province of the legislature of Oklahoma to find that the limitation of trains to seventy cars was reasonably in the interest of safety. It cannot be said that the statute bears no real or substantial relation to public safety, that it is unreasonable or arbitrary, or that it is merely an objectionable regulation or burden upon interstate commerce. Compare, Smith v. Alabama, supra; Nashville, Chattanooga & St. Louis Railway Co. v. Alabama, supra; Hennington v. Georgia, supra; New York, New Haven & Hartford Railroad Co. v. New York, supra; Lake Shore & Michigan Southern Railway Co. v. Ohio, supra; Erb v. Morasch, supra; Chicago, Rock Island & Pacific Railway Co. v. Arkansas, supra; Missouri Pacific Railroad Co. v. Norwood, supra; Atlantic Coast Line Railroad Co. v. Georgia, supra; St. Louis, Iron Mountain & Southern Railway Co. v. Arkansas, supra.

Plaintiff relies upon the due process clause of the Fourteenth Amendment. It is obvious that to comply with the statute plaintiff will be required to expend additional sums in the operation of its business. The cost of compliance with a statute of this kind is an element for appropriate consideration in determining whether the statute is arbitrary, capricious, or repugnant to due process; but, standing alone, it is not always enough to warrant judicial determination of invalidity. Missouri Pacific Railway Co. v. Kansas, 216 U.S. 262, 30 S.Ct. 330, 54 L.Ed. 472; Lehigh Valley Railroad Co. v. Board of Public Utility Commissioners, 278 U.S. 24, 49 S.Ct. 69, 73 L.Ed. 161, 62 A.L.R. 805; Missouri Pacific Railroad Co. v. Norwood, supra. The facts presented are not sufficient to distinguish or set apart this case from those to which reference has been made in which statutes enacted in the exercise of the police power of the state were sustained, although interstate commerce was incidentally and indirectly affected and the expenditure of additional sums was necessitated.

The remaining contention to be considered is that the statute must fall because Congress has occupied the field; that the act infringes and is in conflict with legislation heretofore enacted by Congress pursuant to its powers under the Commerce Clause. To sustain the contention, plaintiff relies upon paragraphs 10 to 17 and paragraph 21 of section 1, and section 26, of the Interstate Commerce Act, as amended, 49 U.S.C.A. §§ 1, 26; and sections 1 and 9 of the Safety Appliance Act, as amended, 45 U.S.C.A. §§ 1, 9. Paragraph 10, section 1, of the Interstate Commerce Act, as amended, defines the term "car service"; paragraph 11 makes it the duty of a railroad company to furnish safe and adequate car service, and to enforce just and reasonable rules, regulations, and practices in respect of car service; paragraph 12 relates to the distribution of cars for the transportation of coal; paragraph 13 authorizes the Commission to require railroads to file with it their rules and regulations relating to car service, and empowers the Commission to direct that such rules and regulations be incorporated in the schedules showing rates, fares and charges for transportation; paragraph 14 authorizes the Commission to establish rules, regulations, and practices touching car service; paragraph 15 is addressed to the furnishing of car service and the use of facilities in case of shortage of equipment, congestion of traffic, or other emergency; paragraph 16 empowers the Commission to make just and reasonable directions in respect to the handling, routing, and movement of traffic over other lines; paragraph 17 requires railroad companies to obey orders of the Commission concerning car service, and provides a penalty for disobedience; and paragraph 21 vests in the Commission authority to require any railroad to provide itself with safe and adequate facilities for performing its car service, and fixes a penalty for refusal or neglect to comply with such an order; and section 26 authorizes the Commission

to order a railroad to install automatic train-stop or train-control devices or other safety devices, and fixes a penalty for the refusal or neglect to comply with such an order. Section 1 of the Safety Appliance Act, as amended, provides that no railroad company shall use on its line any locomotive in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train-brake system, and that no train shall be run in such traffic that does not have a sufficient number of cars in it equipped with such power and train brakes that the engineer on the locomotive can control its speed without requiring brakemen to use the common hand brake for that purpose; and section 9 provides that whenever a train is operated with power or train brakes not less than fifty per cent of the cars[1] shall have their brakes used and operated by the engineer, that all power-braked cars in the train which are associated together with such fifty per cent shall have their brakes so used and operated that the Interstate Commerce Commission may, from time to time, increase the minimum percentage of cars required to be operated with power or train brakes, and that failure to comply with any such requirement shall subject the company to a penalty.

In respect to the regulatory power of the state and the occasions for its exercise, the general subject of commerce has been divided into three separate and distinct classes. They are those in which the power of the state is exclusive, those in which the state may act in the absence of legislation by Congress, and those in which the action of Congress is exclusive and therefore the state cannot act at all. Covington & Cincinnati Bridge Co. v. Kentucky, supra; Western Union Telegraph Co. v. James, 162 U.S. 650, 16 S.Ct. 934, 40 L.Ed. 1105; Southern Railway Co. v. Reid, 222 U.S. 424, 32 S.Ct. 140, 56 L.Ed. 257. The reasonable limitation of the length of trains in the interest of public safety falls within the second class. As to that class, the exercise of the paramount power of Congress is necessary to take from the state its subordinate power to legislate. Covington & Cincinnati Bridge Co. v. Kentucky, supra; Western Union Telegraph Co. v. James, supra.

And mere congressional delegation of power to the Interstate Commerce Commission to act in respect to that class does not require the state to yield. It is only after action by the Commission that the state is shorn of its power. Missouri Pacific Railway Co. v. Larabee Flour Mills Co., 211 U.S. 612, 29 S.Ct. 214, 53 L.Ed. 352; Chicago, Milwaukee & St. Paul Railway Co. v. State Public Utilities Commission, 242 U.S. 333, 37 S.Ct. 173, 61 L.Ed. 341; c/f Missouri, Kansas & Texas Railway Co. v. Harris, 234 U.S. 412, 34 S.Ct. 790, 58 L.Ed. 1377, L.R.A.1915E, 942. But the intent of Congress' to exert its superior authority and thus exclude or supersede state legislation concerning the same matter is not to be lightly inferred. It must be fairly manifested. Reid v. Colorado, 187 U.S. 137, 148, 23 S.Ct. 92, 47 L.Ed. 108; Savage v. Jones, 225 U.S. 501, 533, 32 S.Ct. 715, 56 L.Ed. 1182; Atlantic Coast Line Railroad Co. v. Georgia, supra; Southern Railway Co. v. Railroad Commission of Indiana, 236 U.S. 439, 446, 35 S.Ct. 304, 59 L.Ed. 661; Illinois Central Railroad Co. v. Public Utilities Commission, 245 U.S. 493, 510, 38 S.Ct. 170, 62 L.Ed. 425; Napier v. Atlantic Coast Line Railroad Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432; Atchison, Topeka & Santa Fe Railway Co. v. Railroad Commission, 283 U.S. 380, 392, 393, 51 S.Ct. 553, 75 L.Ed. 1128; Gilvary v. Cuyahoga Valley Railway Co., 292 U.S. 57, 54 S.Ct. 573, 78 L.Ed. 1123; c/f Missouri, Kansas & Texas Railway Co. v. Haber, 169 U.S. 613, 623, 18 S.Ct. 488, 42 L.Ed. 878. And it is within the power of Congress to limit its regulation to only part of a given field, thus leaving the remainder open to action by the state. Southern Railway Co. v. Railroad Commission of Indiana, supra; Gilvary v. Cuyahoga Valley Railway Co., supra; c/f Napier v. Atlantic Coast Line Railroad Co., supra.

The acts of Congress relied upon fail to make specific reference to the length of trains as an element of safety, and it is not contended that the Interstate Commerce Commission has acted or asserted its authority to act in respect of the matter under the powers which Congress has delegated to it. True, some if not all of the statutes concern themselves with various aspects of safety in the

---

[1] Fixed by subsequent regulation of the Interstate Commerce Commission, at eighty-five per cent. See, Fairport, Painesville & Eastern Railroad Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446.

616

operation of trains. But, fairly construed, they do not contain any provision from which it can be reasonably implied that Congress intended to exert the paramount character of its authority in relation to the length of trains in such manner as to exclude or supersede state action. And until an intent to exercise such superior authority has been indicated, the state is free to legislate in the exertion of its police power. Compare, Atlantic Coast Line Railroad Co. v. Georgia, supra; Vandalia Railroad Co. v. Public Service Commission, 242 U.S. 255, 37 S.Ct. 93, 61 L.Ed. 276; Gilvary v. Cuyahoga Valley Railway Co., supra.

In arriving at the conclusion that the statute of the state is without constitutional infirmity, we are mindful of Atchison, T. & S. F. Ry. Co. v. La Prade, D.C., 2 F.Supp. 855,[2] and Southern Pacific Co. v. Mashburn, D.C., 18 F.Supp. 393. We make no attempt to distinguish those cases. For the reasons previously indicated herein, we are unable to share the conclusion there reached.

The restraining order will be vacated, and a temporary injunction will be denied.

VAUGHT, District Judge (dissenting).

The majority opinion fairly and fully states the issues in this case. It also reviews the authorities, both state and federal, passing upon kindred issues to those herein involved. But, as stated in the majority opinion, only two courts have passed upon the identical question here presented.

A three-judge court in the District of Arizona (Atchison, T. & S. F. Ry. Co. v. La Prade, 2 F.Supp. 855) held a similar statute, passed by the Legislature of Arizona, unconstitutional; and four years later, a three-judge court in the District of Nevada (Southern Pacific Co. v. Mashburn, 18 F.Supp. 393) held a similar statute, passed by the Legislature of Nevada, unconstitutional, following and approving the doctrine announced in Atchison, T. & S. F. Ry. Co. v. La Prade, supra.

These two important decisions of the three-judge courts are mentioned but are neither followed nor distinguished by the majority opinion. In the Arizona case the court carefully reviewed the authorities relied upon in the majority opinion but reached an entirely different conclusion.

The majority opinion states that by a preponderance of the evidence presented in this case a train of more than seventy cars is more unsafe than trains of seventy cars or less.

I cannot agree with the conclusion of my learned associates. In my judgment, the preponderance of the evidence in this case supports the contention that long trains tend to add to the safety of operation and to the prevention of accidents, and that the conclusion reached in the majority opinion, that the Act in question is a safety measure, is not supported by the evidence.

Whether this is a safety measure, the majority opinion contends, is a matter for the Legislature to decide. If the Legislature decides that this is a *safety measure,* and the *safety measure* is in direct conflict with the Constitution and laws of the United States, then the measure must fall notwithstanding it was determined to be a safety measure by the state legislative body.

In Atchison, T. & S. F. Ry. Co. v. La Prade, supra [2 F.Supp. 859], the court said:

"Clearly, the Constitution has conferred upon Congress full and exclusive power to regulate commerce between the states, and any attempted enforcement of the statute of a state, passed under the guise of the police power which directly affects interstate commerce to such an extent as to amount to a regulation thereof, is void and will be enjoined. Hall v. De Cuir, 95 U. S. 485, 489, 24 L.Ed. 547, and other cases.

\* \* \*

"In the case of Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 47 S.Ct. 207, 210, 71 L.Ed. 432, a case involving a statute of Wisconsin, prescribing a cab curtain for locomotives, Mr. Justice Brandeis said:

" 'The federal and the state statutes are directed to the same subject—the equipment of locomotives. They operate upon the same object. It is suggested that the power delegated to the Commission has been exerted only in respect to minor changes or additions. But this, if true, is not of legal significance. It is also urged that, even if the Commission has power to prescribe an automatic firebox door and a cab curtain, it has not done so, and that it has made no other requirement inconsist-

---

[2] Dismissed as to the substituted defendant, Ex parte La Prade, 289 U.S.   444, 53 S.Ct. 682, 77 L.Ed. 1311.

ent with the state legislation. This, also, if true, is without legal significance. The fact that the Commission has not seen fit to exercise its authority to the full extent conferred, has no bearing upon the construction of the act delegating the power. We hold that state legislation is precluded, because the Boiler Inspection Act [45 U.S.C.A. § 22 et seq.], as we construe it, was intended to occupy the field. The broad scope of the authority conferred upon the Commission leads to that conclusion. \* \* \*

"'If the protection now afforded by the Commission's rules is deemed inadequate, application for relief must be made to it. The Commission's power is ample.'"

The majority opinion assumes that Congress has passed no act dealing with the subject of train lengths; that the Boiler Inspection Act, the Safety Appliance Act, and Section 26 of the Interstate Commerce Act do not cover the dangers and hazards of train operation; and that until Congress deals with this subject specifically, the states are free to adopt such regulations in the exercise of police power.

In Atchison, T. & S. F. Ry. Co. v. La Prade, supra, the court analyzed this proposition and said:

"We cannot agree to this proposition. The Interstate Commerce Act, section 1, subdivision 10, title 49 U.S.C.A., which deals with the subject of car service, provides as follows: 'The term "car service" in this chapter shall include the use, control, supply, movement, distribution, exchange, interchange, and return of locomotives, cars, and other vehicles used in the transportation of property, including special types of equipment, and the supply of trains, by any carrier by railroad subject to this chapter.'

"Subdivision 14 of said section 1, provides: 'The commission may, after hearing, on a complaint or upon its own initiative without complaint, establish reasonable rules, regulations, and practices with respect to car service by carriers by railroad subject to this chapter, including the compensation to be paid for the use of any locomotive, car, or other vehicle not owned by the carrier using it, and the penalties or other sanctions for nonobservance of such rules, regulations or practices.'

"The power conferred by Congress upon the Interstate Commerce Commission to regulate the supply of trains must necessarily include authority to prescribe the number of interstate trains to be operated by the carrier. The Arizona law limiting the number of cars contained in a freight or passenger train in effect prescribes the number of trains to be operated by the interstate carrier, by increasing the number of trains after interstate commerce enters within the state. It is therefore in conflict with and attempts to occupy the same field of regulation delegated to the Interstate Commerce Commission by the car service act."

In Savage v. Jones, 225 U.S. 501, 32 S. Ct. 715, 722, 56 L.Ed. 1182; the case of Hennington v. Georgia, 163 U.S. 299, 16 S.Ct. 1086, 41 L.Ed. 166, was cited and considered, and the court said: "The state cannot, under cover of exerting its police powers, undertake what amounts essentially to a regulation of interstate commerce, or impose a direct burden upon that commerce."

I am so convinced that the reasoning and conclusions in the Arizona and Nevada cases are sound and that they should be followed by this court, that it is my judgment the Oklahoma Act should be held unconstitutional and a temporary injunction should issue.

I most respectfully dissent.