## SEABOARD AIR LINE RAILWAY *v.* BLACKWELL.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF GEORGIA.

No. 213.   Submitted April 24, 1917.—Decided June 4, 1917.

That provision of the "Blow-Post" law of Georgia (Civil Code, 1910, §§ 2675–2677), which requires railroad companies to check the speed of trains before public road crossings so that trains may be stopped in time should any person or thing be crossing the track there, is a direct and unconstitutional interference with interstate commerce as applied to the state of facts specifically pleaded by the defendant interstate carrier in this case, whereby it appears that, to comply with the requirement, the interstate train in question would have been obliged to come practically to a stop at each of 124 ordinary grade crossings within a distance of 123 miles in Georgia extending from Atlanta to the South Carolina line, and that more than six hours would thus have been added to the schedule time of four hours and thirty minutes. *Southern Railway Co.* v. *King*, 217 U. S. 524, distinguished.

16 Ga. App. 504, reversed.

THE case is stated in the opinion.

*Mr. Lamar C. Rucker, Mr. Andrew J. Cobb, Mr. Howell C. Erwin* and *Mr. W. L. Erwin* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

This writ of error is directed to a judgment entered upon a verdict for the sum of $1,000 in the city court of Elberton, Georgia, for the death of a son of defendant in error alleged to have been caused by the railway company.

The judgment was affirmed by the Court of Appeals of Georgia.

The facts as charged are: That the deceased was driving a horse and buggy along a public road in the county of Elbert and while crossing the railroad track of the railway company at a public crossing outside of the city of Elberton he was struck by the engine of one of the company's passenger trains and received injuries from which he died three days later.

That the employees of the company in charge of the train failed to blow the engine whistle at the blow-post 400 yards south of the crossing, failed to keep blowing it until the train arrived at the crossing, and failed to check the speed of the train at such blow-post and keep it checked until the train reached the crossing, and, so failing, the company was guilty of negligence.

That the employees of the company failed to keep the train under control and approached the crossing at a high and dangerous rate of speed so that they could not stop the same in time to save the life of the deceased, and that such conduct was negligence. And that "such conduct was negligence if they saw said deceased on the crossing, and it was negligence if they did not see him, and it was negligence under the blow-post law,[1] and it was negligence regardless of the blow-post law."

---

[1]"Sec. 2675. *A post to be erected.* There must be fixed on the line of said roads, and at the distance of four hundred yards from the center of each of such road crossings, and on each side thereof, a post, and the engineer shall be required, whenever he shall arrive at either of said posts, to blow the whistle of the locomotive until it arrives at the public road, and to simultaneously check and keep checking the speed thereof, so as to stop in time should any person or thing be crossing said track on said road.

"Sec. 2676. *Neglecting to erect such posts.* Should any company fail or neglect to put up said posts, the superintendent thereof shall be guilty of a misdemeanor.

"Sec. 2677. *Failing to blow whistle.* If any engineer neglects to blow

The company by its answer denied the various acts of negligence charged against it and its employees and denied "that the failure to comply with said blow-post law was negligence on its part relatively to the transaction in question."

The company set out the applicable sections of the law and alleged that its train was running in interstate commerce between the States and especially between Georgia and South Carolina. That between the city of Atlanta, Georgia, and the Savannah River, a distance of 123 miles, where the same is the boundary line of Georgia, there are 124 points where the line of the railroad crosses public roads of the different counties of the State, established pursuant to law, and that all of such crossings are at grade.

That in order to comply with the law the speed of a train would have to be so slackened that there would be practically a full stop at each of the road crossings; that the time required for such purpose would depend upon various conditions, which might or might not exist at the time and at the crossings, among others, the state of the weather and the percentage of grade; but it would not be less than three minutes for a train composed of an engine and three cars, and for a train of a greater number of cars the time would be greater—for an average freight train, not less than five minutes.

That the train alleged to have caused the death of the deceased was composed of an engine, a mail car and two coaches, and that if the blow-post law had been complied

said whistle as required, and to check the speed as required, he is guilty of a misdemeanor: Provided, that within the corporate limits of the cities, towns, and villages of this State, the several railroad companies shall not be required to blow the whistle of their locomotives on approaching crossings or public roads in said corporate limits, but in lieu thereof the engineer of said locomotive shall be required to signal the approach of their trains to such crossings and public roads in said corporate limits, by tolling the bell of said locomotive; and on failure to do so, the penalties of this section shall apply to such offense."

with on the day in question at least three minutes would have been consumed at each crossing, more than six hours between Atlanta and the Savannah River. That the running time between those points according to the adopted schedule was four hours and thirty minutes. That if the law had been complied with the time consumed between those points would have been more than ten and one-half hours.

That for freight trains the time consumed would be more than sixteen hours, the maximum speed of such trains on the company's road being twenty miles an hour.

That the crossings are the usual and ordinary grade crossings and there are no conditions which make any one of them peculiarly dangerous other than such danger as may result from the crossing of a public road by a railroad track at grade.

That between the City of Atlanta and the Savannah River the line of the company's railroad crosses the tracks of two other railroads and that under the laws of the State a train is required to come to a full stop fifty feet from the crossing and that the time so consumed would increase the time required to operate between the points referred to.

That the law as applied to the train in question is an unreasonable regulation of interstate commerce and a violation of Paragraph 3, § 8, Article I, of the Constitution of the United States, and that therefore the company is not guilty of the various acts of negligence charged against it.

Upon demurrer to the answer of the company the averments in regard to the law were struck out except the denial that the failure to comply with the law was negligence on the company's part "relatively to the transaction in question."

The case so went to the jury, including the defense that the deceased failed to exercise ordinary care and diligence

for his own safety. The jury returned a verdict for the sum of $1,000.

A motion for a new trial was denied. The railway company then took the case to the Court of Appeals of the State and that court invoked the instruction of the Supreme Court upon the question whether that part of the law (§ 2675, Civil Code of the State) which requires the engineer to check the speed of the train on approaching a public crossing, so as to stop in time should any person or thing be crossing the railroad track on its road, is unconstitutional so far as an interstate train is concerned, under the conditions set forth in the answer of the company, for the reason that as thus applied the statute is a regulation of interstate commerce and repugnant to the commerce clause of the Constitution of the United States.

The Supreme Court answered the question in the negative. The opinion of the court is very elaborate, but the basis of it is that the law is a valid exercise of the police power of the State, that there was no displacement of its exercise by congressional action, and that by its exercise in the law in question it did not directly burden interstate commerce.

The Court of Appeals accepted necessarily the views of the Supreme Court and sustained the ruling of the trial court upon the demurrer to the plea of the company that the law violated the commerce clause of the Constitution.

To the contention of the company that the deceased had not observed ordinary care for his own safety and could have avoided the injury which resulted in his death, the court answered that it was a jury question, and said: "In view of the evidence as to the defendant's failure to comply with the provisions of the 'blow-post law' there is sufficient testimony as a whole to support the jury's finding in favor of the plaintiff." The court hence affirmed the judgment.

It will be observed, therefore, from this statement that

the law of the State was an element in the decisions of the state tribunals and its constitutionality was sustained against the attacks of the railway company.  The question is, therefore, presented for our consideration.  In its consideration we need not descant upon the extent of the police power of the State and the limitations upon it when it encounters the powers conferred upon the National Government.  There is pertinent exposition of these in *Southern Railway Co.* v. *King,* 217 U. S. 524, in which the law now under review was passed upon.  The case is clear as to the relation of the powers and that the power of the State cannot be exercised to directly burden interstate commerce.  It was recognized that there might be crossings the approach to which the State could regulate.  But, on the other hand, it was said there might be others so numerous and so near together that to require the slackening of speed would be practically destructive of the successful operation of interstate passenger trains, and, therefore, "statutes which require the speed of such trains to be checked at all crossings so situated might not only be a regulation, but also a direct burden upon interstate commerce, and therefore beyond the power of the State to enact."

That case went off on a question of pleading.  An answer was filed that did not invoke the Federal Constitution.  This was attempted to be done by an amended answer which was very general and to which a demurrer was sustained.  At the trial of the action there was an offer of evidence of the specific effect of the law upon the operation of trains as showing the impediment of the law to interstate commerce.  The evidence was excluded.  This court sustained the ruling on the ground that the evidence was not admissible under the pleadings.  The ruling upon the demurrer to the answer was sustained on the ground that the answer contained only general averments constituting "mere conclusions."  It was said that the aver-

316 OCTOBER TERM, 1916.

White, Ch. J., Pitney and Brandeis, JJ., dissenting.   244 U. S.

ments "set forth no facts which would make the operation of the statute unconstitutional. They do not show the number or location of the crossings at which the railway company would be required to check the speed of its trains so as to interfere with their successful operation. For aught that appears as allegations of fact in this answer the crossing at which this injury happened may have been so located and of such dangerous character as to make the slackening of trains at that point necessary to the safety of those using the public highway, and a statute making such requirement only a reasonable police regulation, and not an unlawful attempt to regulate or hinder interstate commerce. In the absence of facts setting up a situation showing the unreasonable character of the statute as applied to the defendant under the circumstances, we think the amended answer set up no legal defense, and that the demurrer thereto was properly sustained."

The facts so specified and which it was decided would give illegal operation to the statute are alleged in the present case, and, assuming them to be true—and we must so assume—compel the conclusion that the statute is a direct burden upon interstate commerce, and, being such, is unlawful. The demurrer to the answer averring them was therefore improperly sustained.

We express no opinion on the third defense of the company.

*Reversed and case remanded for further proceedings not inconsistent with this opinion.*

The Chief Justice, Mr. Justice Pitney and Mr. Justice Brandeis dissent on the ground that the regulation in question was within the class which the State is entitled to enact in the absence of congressional action, and until such action. There having been no action by Congress, there is therefore no ground for holding the state action void as a regulation of interstate commerce.