Hough, J.
The errors of law complained of in oral argument and the briefs of counsel may be reduced to four, namely:
1. That the rule followed by the trial court in reference to contributory negligence of a person of tender years was incorrect.
2. That if the decedent was a boy ten years of age, and because of that age could not be charged with negligence of the same degree as a person of mature years, then contributory negligence was chargeable to the father and mother, who permitted and directed him to drive the horse on the highway, from which act the injury and death occurred.
3. That the court charged on matters not covered by the proof.
4. That the ordinance which was pleaded and admitted in proof prescribed an unreasonable regulation of interstate commerce.
The general charge of the court is challenged on all the above questions.
1. Contributory negligence becomes generally a question to be solved by the jury, and this is true for the reason that in the vast majority of personal *476 injury cases there is a dispute and contradiction in the declarations and actions of the plaintiff. The instant case is no exception to that majority. The standard governing such negligence on the part of a youth is not the same as that of an adult. (Rolling Mill Co. v. Corrigan, 46 Ohio St., 283, and Lake Erie & Western Rd. Co. v. Mackey, 53 Ohio St., 370.) But, while the standard may differ, the question, when facts are contradictory or disputed, remains one for the consideration and disposition of the jury under the facts and circumstances of the case, with proper safeguards in the charge fixing that standard. The court did not overlook this rule or go astray in this respect, when it said:
“Plaintiff’s decedent because of his tender years is not chargeable with the same standard of care and caution as would be expected of a person of mature years. The degree of care and caution which said decedent child was required to exercise was that degree of care and caution which could ordinarily be exercised under similar circumstances by a' child of the same age, education and experience, not by any child of the same age, but by a child of the same age, education and experience of ordinary care and prudence for said age, educa-. tion and experience.”’
2. The third defense of the second amended answer charges the decedent with contributory negligence, and the fourth defense alleges that because he was a youth of tender years he was incapacitated for performing the task he was engaged in, and that his parents who permitted and directed him were guilty of contributory negligence.
*477 The fourth is in a sense inconsistent with the third defense. If the boy by reason of age, education and experience, was capable of contributory negligence, the parents must be vindicated of that primary contributory negligence that might be claimed by reason of the accident. In fact, the trial court in submitting the question of contributory negligence of the boy to the jury did so, and properly, on the theory that the boy’s own negligence was an essential, primary factor to be determined by the jury. That is to say, where the proof shows that the boy is of that age, education and experience, to justify the submission of the question of his contributory negligence to the jury, as appeared in this case, the determination of that question by the jury, where no special finding is required or returned, establishing the conclusion of the jury that the boy because of his age, education and experience was not capable of guilt of contributory negligence, effectually covers the element of contributory negligence applied to the particular accident of the particular case, and contributory negligence of the father or mother or both, as the question is raised in the record, has no relevancy except as it may affect their right of recovery as beneficiaries. The court very properly instructed, the jury when it said:
“In the' event you find that the defendant was liable [that is to say in the event that the jury resolved the contributory negligence of the boy in the boy’s favor, and against the company, and found the company guilty of actionable negligence], if you find that the .decedent’s father or mother, or *478 either or both were negligent in placing the decedent in a dangerous position, and that the negligence contributed directly and proximately to the injury and death, you should not allow damages or compensation to the one you find so negligent, or to either if you find both so negligent, but you should only allow damages or compensation to those next of kin not found so negligent.”
When the jury have arrived at that stage in their deliberations, if they do so arrive, where the company is guilty of actionable negligence, and the boy is acquitted of negligence, then it is necessary for them to determine whether or not the father or mother, or both of them, were negligent in a manner that contributed directly or proximately to the injury or death. If it is determined that they were, they may not recover as beneficiaries; if determined that they were not, they may so recover. Wolf, Admr., v. Lake Erie & Western Ry. Co., 55 Ohio St., 517, and Cleveland, Akron & Columbus Ry. Co. v. Workman, Admr., 66 Ohio St., 509.
The jury will be presumed to have determined this question under the instructions given, and, if they found either one thus guilty, to have eliminated in the general verdict any amount to that one as beneficiary, especially in the absence of a request for and the return of special findings thereon.
3. We find nothing that can be fairly construed to be prejudical error under this head.
4. The petition sets forth the following allegations in reference to an ordinance of the city of Columbus :
*479 “On the fourth day of February, 1889, the said city of Columbus duly passed an ordinance which makes it unlawful to operate locomotives and trains over crossings at grade, within said municipality at a rate of speed in excess of six miles per hour. Said ordinance * * * was in full force and effect on the said seventeenth day of October, 1917.”
The second amended answer concedes the existence of the ordinance, and-alleges that it prescribes an unreasonable regulation of interstate commerce. Th'e ordinance itself, which was admitted in evidence, reads as follows:
“It shall be unlawful for any railroad company or corporation, by or through its employes or agents, to run or move any locomotive, car, cars or train, upon or along any railroad track within the corporate limits of the city of Columbus, at a rate of speed greater than six miles an hour.”
The amended answer, which was superseded by the second amended answer, set out much broader allegations in this particular, for the purpose probably of accommodating proof tending to show that a compliance with the ordinance would be an impossibility, under the contention that the unreasonableness of carrying out the provisions of the regulation amounted to unconstitutionality in the ordinance. As has been stated above, these matters, upon motion, were expunged from the pleadings by action of the court.
The defendant company asked the court before argument to charge the jury that the ordinance was invalid, and the plaintiff at the same time requested *480 instructions that it was valid. The court' refused the request of the former, and granted that of the latter, and in the general charge used the following language:
“An ordinance of the city of Columbus regulating the speed of trains and providing that no train-shall be run at a greater speed than six miles per hour at grade crossings within the municipality has been introduced and testimony has been introduced tending to show the violation of this ordinance by the defendant.
“The court charges you that the violation of a municipal ordinance passed in the proper exercise of police power in the interest of public safety and not in conflict with the general laws is negligence per se, that is, is negligence of itself, and where such acts of negligence by the defendant is the direct and proximate cause of an injury not directly contributed to by want of due care on the part of the injured person the defendant is liable.
“In other words, before recovery 'can be had against the defendant on account of the negligent act, committed by the violation of the ordinance, if you find that such ordinance was violated, it must be shown that that negligent act was the direct and proximate cause of the injury and. that that injury was not directly contributed to by the plaintiffs decedent.”
The validity of the ordinance is therefore raised in a number of ways. If the ordinance was valid, the court correctly charged, following the rule of law announced in the case of Schell v. DuBois, Admr., 94 Ohio St., 93. And further, if valid, the *481 action of the court in sustaining the motion to strike out was properly taken. But, if the ordinance was invalid, or if the defense tendered thereto in the amended answer was good, then the charge of the court as given was improper, and the disposition of the motion was also improper, and would be the basis of error.
The reply admits that the company is engaged in interstate commerce, operating many trains daily over its tracks, that the.train figuring in the accident was so engaged and at the time en route from Cincinnati to Cleveland, through Columbus, and that the speed, according to-the ordinance, could not exceed six miles per hour over grade crossings. And here it ought to be noted that the terms of the ordinance itself would permit of a broader admission on the part of the plaintiff below, relying as he does upon the ordinance, b'ecause by its terms that speed could not exceed six miles per hour, not only at grade crossings, but at all other crossings as well, and, in fact, at all points within the corporate limits of the city of Columbus, a distance of several miles; and it is the claim of the railroad company that the observance of the speed limitation of six miles per hour through the city would materially affect time schedules, particularly of the fast mail and other trains carrying interstate passengers and commerce.
That an ordinance regulating speed, passed in the proper exercise of the police power, in the interest of the safety and for the protection of the public, is competent evidence in a personal injury *482 case, under the settled law of Ohio, cannot be doubted. Back in the eighties, Judge' Johnson, speaking for this court in a case from the city of Bellaire, against a railway company, laid down the rule which was followed for many years, in Meek v. Pennsylvania Co., 38 Ohio St., 632; and, again, more than thirty years later, this court in another Bellaire case, reported by Judge Johnson (another Judge Johnson, of course), in Schell v. DuBois, Admr., 94 Ohio St., 93, announced a like rule so far as competency is concerned, where it is said in paragraph 2 of the syllabus:,
“The violation of a municipal ordinance passed in the proper exercise of the police power in the interest of the public safety, and not in conflict with general laws, is negligence per se, and where such act of negligence by a defendant is the direct and proximate cause of an injury, not directly contributed to by the want of due care on the part of the injured person, the defendant is liable.”
We come then to the reasonableness of existing ordinances as that reasonableness reflects upon constitutional provision and limitation, because it must be conceded that the ordinance is based upon statutory authority, and of course in making the test it must be made under the circumstances and conditions of the case at the present time and not contemporaneous with the passage of the original ordinance or amendment.
Transportation problems and transportation mediums have undergone an amazing change and development since 1889. It is well to keep in mind that the public transportation agencies owe com *483 plex duties and obligations to the whole public, the passengers whom they carry and the shippers for whom they carry, and the remaining body of the general public, to the end that their operation may be conducted in such a way as to preserve the highest degree of safety and accommodation to all. Railroads have developed with the times, and with the growth and. development of the country — from short line independent service, with slow schedules and long transfer waits, to the consolidated fast through service of the transcontinental lines of today. All these improvements were necessary to keep pace with the times and the demands of the public, and since the period above mentioned other transportation agencies have been created and made efficient by the master minds and industry of the nation. Electric and gasoline motor vehicles for public as well as private transportation have come into vogue and have fixed themselves permanently in the business and affairs of the country.
In invoking the police power for the safety of the public in this state the legislature has regulated .the use of motor vehicles, both public and private, and has imposed speed limits. In other than business or closely built-up sections of a municipality a maximum speed of twenty miles per hour is permitted, and although commercial motor cars have been further legislated upon the maximum speed for the greater majority of classes has not been reduced, but in some cases increased.
The scene of this accident was near the corporate limits of the city, so that the 20-mile limit would *484 apply to the speed allowed the majority of motor vehicles at this point.
Rail transportation on fixed steel tracks is con-cededly and normally a faster method of transportation than that of motor vehicles upon .highways, with no fixed or stationary traction, yet the regulatory laws applying to these two methods of transportation differ materially, with an apparent discrimination against the rail type. -There is no dearth of authority on this question, as the question has been raised in many ways and passed upon by the federal and state courts in many instances. And it would appear from a casual survey that there existed a lack of harmony in the conclusions reached. Upon careful analysis much of the inconsistency disappears. The older decisions almost uniformly hold that properly delegated police power may be exercised without limitation, so long as it is not invoked unreasonably and arbitrarily, and just as uniformly sustain the regulatory acts of the legislative bodies, for the reason, we think, that the exigencies of the cases in those earlier Times were' not persuasive of an unreasonable or discriminatory situation or application.
The rule of law is in no wise different today. It is the application of the old rule to a set of facts based upon modern development of the transportation business, with the corresponding needs and demands of the public, reducing the situation surrounding the later-day cases to an unreasonable absurdity, that has led to conclusions of a different and opposite effect arrived at in the more recent decisions.
*485 An extremely well-considered case on the subject is that of Chicago & Alton Rd. Co. v. City of Carlinville, 200 Ill., 314, where this question is fully discussed, and a great number of the older decisions are collated and analyzed. While the holding in that case sustains the ordinance under consideration, yet the law announced is pertinent to the instant case. Proposition five of the syllabus reads as follows:
“The enactment of an ordinance regulating the speed of trains is an exercise of police power, and before a court can hold such an ordinance unreasonable, the want of necessity for such a measure for the public safety must be clearly made to appear.”
And, further, proposition three announces the following rule:
“An ordinance regulating the speed of trains, which conforms to the limitation prescribed by the statute, is presumed to be reasonable, and it is incumbent upon the railroad company seeking to void it to show affirmatively its unreasonableness.”
The defendant below attempted to bring itself within these rules of law by the allegations of the •amended answer, in such a way as to accommodate proof tending to show the impossibility of observing the regulation and at the same time fulfilling its duties as a carrier, and to further show that the specific crossing had no peculiar elements of danger.
The United States federal court in 1915 announced substantially the same rule as laid down *486 in the Illinois case, supra. This appears in the case of Lusk v. Town of Dora, 224 Fed. Rep., 650, where it is said in proposition two of the syllabus:
“An ordinance regulating the speed of trains, enacted as an exercise of the police power of the municipality delegated to it by its charter, is presumptively reasonable and valid, and not -in conflict with the federal Constitution, but the presumption may be rebutted.”
And in proposition three of the syllabus:
“The reasonableness of a municipal ordinance, while a question of law, depends on the peculiar facts in each case.”
It was held in this case that the ordinance, under the peculiar facts adduced, imposed an unreasonable burden on interstate commercé.
A decision of the United States supreme court rendered in 1917 very well illustrates the trend of modern decisions upon the question under consideration. In Seaboard Air Line Ry. Co. v. Blackwell, 244 U. S., 310, under the peculiar facts put before the court. in that 'case, the following announcement of the law was made:
“That provision of the ‘Blow-Post’ law of Georgia (Civil Code, 1910, §§ 2675-2677), which requires railroad companies to check the speed of trains before public road crossings so that trains may be stopped in time should any person or thing be crossing the track there, is a direct and unconstitutional interference with interstate commerce as applied to the state of facts specifically pleaded by the defendant interstate carrier in this case, *487 whereby it appears that, to comply with the requirement, the interstate train in question would have been obliged to come practically to a stop .at each of 124 ordinary grade crossings within a distance of 123 miles in Georgia extending from Atlanta to the South Carolina line, and that more than six hours would thus have been added, to the schedule time of four hours and thirty minutes. Southern Railway Co. v. King, 217 U. S., 524, distinguished.”
We are persuaded that if in the trial of the case before us the defendant had been permitted to develop the issuable facts set out in the amended answer there would have been presented for solution of court and jury a different situation; and following the line of decisions above mentioned we reach the conclusion that the trial court erred in its ruling on the motion to strike out the matters appearing in the amended answer, and that the charge of the court in respect to the validity of the ordinance, as that validity is reflected by its reasonableness or unreasonableness in this case, while consistent of course with its holding on the motion, nevertheless constituted prejudicial error. Nor does the conclusion here arrived at in any wise violate the rule of law announced by this court in the first proposition of the syllabus in the case of Blancke, Admx., v. New York Central Rd. Co., ante, 178, nor is it inconsistent with the language used by the judge of this court announcing the opinion in that case, where it is said, at page 184:
“The presumption of law obtains that such regulation is necessary and reasonable, and before the court will interfere with the discretion committed *488 to the public authorities it must clearly appear that the exercise of such power upon the part of the municipality is unreasonable or unnecessary for the public safety. And only where it is shown clearly to the court that the exercise of this power is unreasonable and arbitrary, unduly restricting the speed of trains within the corporate limits, or where it unreasonably limits the speed of the trains in open or outlying sections óf the municipality where the public safety is not affected, may the court declare such regulatory ordinance unconstitutional and void.”
The case is therefore reversed and remanded to the court of common pleas for a new trial in accordance with this opinion.

Judgment reversed.

Marshall, C. J., Johnson, Robinson, Jones and Matthias, JJ., concur.