192 So.2d 451

**SOUTHERN RAILWAY COMPANY**

**v.**

**C. E. EDMUNDS.**

**6 Div. 114.**

Supreme Court of Alabama.

Oct. 27, 1966.

Rehearing Denied Dec. 8, 1966.

Bankhead, Petree & Savage, Jasper, for appellant.

248

Tweedy & Beech, Jasper, for appellee.

GOODWYN, Justice

Appeal by defendant, Southern Railway Company, from a judgment rendered in accord with a verdict in favor of plaintiff, C. E. Edmunds, and also from a judgment overruling defendant's motion for a new trial. The suit was brought to recover damages resulting from the collision of plaintiff's truck with defendant's train at a public road crossing in the town of Parrish, Alabama.

The principal question before us is whether a part of § 170, Tit. 48, Code of Alabama 1940, places an undue burden on interstate commerce contrary to Article I,

§ 8, of the United States Constitution. Section 170 provides as follows:

"The engineer or other person having control of the running of a locomotive on any railroad, must blow the whistle or ring the bell at least one-fourth of a mile before reaching any public road crossing, or any regular station or stopping place on such railroad, and continue to blow the whistle or ring the bell at short intervals, until it has passed such crossing, or reached such station or stopping place. He must also blow the whistle or ring the bell immediately before, and at the time of leaving such station or stopping place; *and also immediately before entering any curve crossed by a public road, where he cannot see at least one-fourth of a mile ahead, and must approach and pass such crossing at such speed as to prevent accident in the event of an obstruction at the crossing.* * * * [Emphasis supplied.]

The part challenged is emphasized.

Section 170 had its origin in Act No. 13 of the Sixth Biennial Session of the General Assembly of Alabama, held in 1858. This enactment provided for action to be taken "immediately before entering any curve crossed by a public road on a cut." Beginning with the Code of 1887 (§ 1144), the words "on a cut" have not been a part of the law.

The collision occurred about 11:00 P.M. when appellant's freight train, consisting of five diesel engines and eighty-four cars, was traveling from Sheffield to Birmingham. The crossing is located on a curve with two sets of tracks crossing the main street of Parrish, a town of approximately 1200 people. The tracks curve out of a cut from the direction of Sheffield. The crossing is not visible to the operator of a train until he is within 450 feet of it. The evidence indicates that the speed of the train, as the engine entered the curve, was approximately 18 miles per hour. As the engine rounded the curve, the engineer and fireman saw the truck stalled on the cross-

ing. Brakes were immediately applied and the speed of the train at the point of impact was approximately 6 or 8 miles per hour.

The distance from Sheffield to Birmingham on appellant's track is 143.2 miles, along which there are 63 crossings on curves where the engineer cannot see the crossing for at least one-fourth of a mile.

Fifty-five of the 84 cars of the train were moving in interstate commerce. Its scheduled running time from Sheffield to Birmingham was six and one-half hours, with an average speed of 23 miles per hour. Appellant introduced evidence to the effect that if the Alabama Curve Statute were complied with, it would take two and one-half to three times as long to make this run, and the average speed would be reduced from .23 to eight or nine miles per hour; that the trip would be over 16 hours long and could not be completed within the time required by the Hours of Service rule of the Interstate Commerce Commission; that with a train of 80 to 90 cars powered by five diesel engines, the application of the emergency brakes would result in the loss of some 12 to 15 minutes before the train could move again; and that to comply literally with the statute such a train would have to make a complete stop and to do so would not only result in a loss of time, but also great economic detriment to the equipment.

Appellant contends that the delay caused its trains by this statute constitutes an undue burden on interstate commerce, and that the statutory requirements for ringing bells and blowing whistles, plus warning lights and signs at crossings, are sufficient safety devices to give the public adequate protection from speeding trains.

■■ Whether a statute burdens interstate commerce and contravenes the commerce clause depends, in the absence of congressional action, upon its reasonableness. The state, under its police power, may enact statutes regulating the speed of interstate trains, provided an unreasonable bur-

den on interstate commerce is not imposed. Seaboard Air Line Railway Company v. Blackwell, 244 U.S. 310, 37 S.Ct. 640, 61 L. Ed. 1160, L.R.A.1917F; Southern Railway Co. v. King, 217 U.S. 524, 30 S.Ct. 594, 54 L.Ed. 868.

Does the statute place an unreasonable burden on interstate commerce? We do not think so.

In support of its position, appellant relies principally on Seaboard Air Line Railway Company v. Blackwell, supra. In that case a Georgia statute was declared unconstitutional because it required a train to check its speed at *every* public crossing. This is unlike the Alabama statute which "does not profess to regulate the rate of speed, at which a train shall be run when approaching a crossing, not in a town or city, except in one case. The engineer is required to blow the whistle, or ring the bell, before entering any curve crossed by a public road * * *, when he can not see at least one fourth of a mile ahead, and to approach such crossing * * * at such moderate rate of speed as to prevent accident in the event of an obstruction at the crossing. In Mo. & Mont. Railway Co. v. Blakely, [59 Ala. 471, 480] supra, speaking of this provision of the statute, it is said: 'To come within this clause, there must be a *curve crossed* by a *public road* * * *, so that the *crossing*, and any *obstruction* upon it, can not be seen a *fourth of a mile ahead.'*" E. Tenn., Va. & Ga. Railroad Co. v. Deaver, 79 Ala. 216, 220. A crossing of this class is singled out, "not only because of the inability of the trainmen to see the crossing in time to avoid injury, but also because usually it is more difficult for the traveler to conserve his own safety by observance of due care at such a crossing." Atlantic Coast Line Railroad Company v. Jackson, 221 Ala. 646, 648, 130 So. 388.

In Southern Railway Co. v. King, supra, where the Georgia "Blow-Post" law was under discussion, the United States Supreme Court said:

" 'It is also within the undoubted province of the state legislature to make regulations with regard to the speed of railroad trains in the neighborhood of cities and towns; with regard to the precautions to be taken in the approach of such trains to bridges, tunnels, deep cuts, and sharp curves, and, generally, with regard to all operations in which the lives and health of people may be endangered, even though such regulations affect, to some extent, the operations of interstate commerce. * * *'

*     *     *     *     *     *

" * * * It is consistent with the former decisions of this court, and with a proper interpretation of constitutional rights, at least, in the absence of congressional action upon the same subject-matter, for the state to regulate the manner in which interstate trains shall approach dangerous crossings, the signals which shall be given, and the control of the train which shall be required under such circumstances. Crossings may be so situated in reference to cuts or curves as to render them highly dangerous to those using the public highways. They may be in or near towns or cities, so that to approach them at a high rate of speed would be attended with great danger to life or limb. * * *"

The court thus recognized some of the conditions which may justify a restriction on the unhindered operation of interstate trains.

As pointed out above, the difference in the Georgia "Blow-Post" law and the Alabama Curve Statute is obvious. The former required a train to reduce its speed at *every* crossing. It would have been equally applicable whether the crossing was visible to the engineer from a mile distance or obscured to within a few feet. Such requirement could not be justified as a reasonable safety measure when balanced with the demands of unhampered interstate commerce by railroads.

■ Such a situation is not present here. The Alabama Curve Statute (§ 170, Tit. 48) has a valid and necessary purpose—the protection of the public when crossing a railroad track at a point where the crossing could not be seen by the person operating the train until practically on top of the unwary motorist or pedestrian. It was passed as a safety measure to protect the public. Sharpe v. Western Railway of Alabama, 234 Ala. 507, 175 So. 542; Miles v. Hines, 205 Ala. 83, 87 So. 837. It seeks to regulate the operation of trains only in those places where their unrestricted operation would be a dangerous hazard to the public. The public should not be put in jeopardy by trains speeding blindly around curves where there are public road crossings. Particularly is this so where, as here, the crossing ·is a busy thoroughfare within a town.

Since enactment of the Alabama Curve Statute, the number and speed of vehicles and the use of the highways in hauling passengers and freight has increased vastly. Today, the necessity for providing safeguards against injury to persons and property at railroad crossings is of increased importance. While it is true that this statute places a burden on interstate commerce, we do not consider it to be an unreasonable burden.

■ The other assignments of error argued by appellant relate to, and have a bearing upon, the amount of damages to be awarded the plaintiff. But the amount of the damages was not questioned in the trial court (in the motion for a new trial or otherwise), nor is it questioned here, as pointed out in appellee's brief. Accordingly, error, if there be eror in any of the challenged rulings, is rendered harmless and cannot work a reversal. See: State v. Dunlap, 279 Ala. 418, 186 So.2d 132, and cases there cited; Louisville and Nashville Railroad Company v. Lynch, 279 Ala. 461, 186 So.2d 921; State v. Jackson, 279 Ala. 425, 186 So.2d 139; State v. LeCroy, 279 Ala. 428, 186 So.2d 142; State v. Peinhardt, 270 Ala. 627, 120 So.2d 728; Lehigh Portland Cement Co. v. Higginbotham, 232 Ala. 235, 167 So. 259; Birmingham Belt R. Co. v. Hendrix, 215 Ala. 285, 110 So. 312, cert. den. 273 U.S. 758, 47 S.Ct. 472, 71 L.Ed. 877.

The judgments appealed from are due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, J., concur.

COLEMAN, J., concurs specially.

COLEMAN, Justice (concurring specially).

I agree wholeheartedly with the holding that § 170, Title 48, does not place an unreasonable burden on interstate commerce.

As to the holding that appellant cannot have review of rulings which relate to the amount of damages because appellant did not claim that the verdict was excessive, as required in State v. Dunlap, 279 Ala. 418, 186 So.2d 132, and State v. Graf, 189 So.2d 912,[1] I reluctantly concur for the reason that the majority of this court recently have twice so ruled over my dissent and further consideration of this case by the entire court would serve no good purpose as is stated in my special concurrence in Cooper v. Watts, ante p. 236, 191 So.2d 519 decided this day.

1. Ante p. 71.