**1174**

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, Missouri Pacific
Railroad Company, Illinois Central Gulf
Railroad Company and Louisiana & Ar-
kansas Railway Company,

National Railroad Passenger
Corp., Intervenor,

v.

ST. CHARLES PARISH POLICE JURY.

Civ. A. No. 80–1544.

United States District Court,
E.D. Louisiana.

June 27, 1983.

Raymond J. Salassi, Jr., Jones, Walker,
Waechter, Poitevent, Carrere & Denegre,
New Orleans, La., for Southern Pacific
Transp. Co.

J. Barnwell Phelps and Dodge Hobson,
Phelps, Dunbar, Marks, Claverie & Sims,
New Orleans, La., for Missouri Pacific R.
Co.

H. Martin Hunley, Lemle, Kelleher, Koh-
meyer & Matthews, New Orleans, La., for
Illinois Cent. Gulf R. Co.

Guy C. Lyman, Jr., Milling, Benson,
Woodward, Hillyer, Pierson & Miller, New
Orleans, La., for Louisiana & Arkansas Ry.
Co.

Abbott J. Reeves, Gretna, La., for St.
Charles Parish Police Jury.

WICKER, District Judge.

This is a suit to enjoin the enforcement of
a parish ordinance limiting the speed of
trains transversing the Parish of St.
Charles, Louisiana to 25 mph or less on the
grounds that the ordinance in question
makes no contribution to safety and uncon-
stitutionally interferes with the movement
of goods and passengers in interstate com-
merce in violation of the Commerce Clause.

This matter was tried to the Court on a
former date. On the morning of the second
day of trial, counsel for the defendant ad-
vised that the ordinance had been repealed
and moved to dismiss plaintiffs' action on
the grounds of mootness. After defend-
ant's motion was denied and at the conclu-
sion of the presentation of plaintiffs' evi-
dence, defendant refused to present any
evidence, contending the matter had be-
come moot. At that time, I ruled in favor
of the plaintiffs giving informal oral rea-

sons. Written findings of fact and conclusion of law follow.

## FINDINGS OF FACT

1. Plaintiff, Southern Pacific Transportation Company is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of California, and is authorized to do and is doing business in the State of Louisiana, Parish of St. Charles.

2. Plaintiffs, Missouri Pacific Railroad Company and Louisiana & Arkansas Railway Company are corporations organized under the laws of the State of Delaware, with their principal places of business in the State of Missouri and are authorized to do and are doing business in the State of Louisiana, Parish of St. Charles.

3. Plaintiff, Illinois Central Gulf Railroad Company is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Illinois, and is authorized to do and is doing business in the State of Louisiana, Parish of St. Charles.

4. Intervenor, National Railroad Passenger Corporation is a corporation chartered under the statutes of the United States of America and organized under the laws of and with principal offices in the District of Columbia. (45 U.S.C. § 542; 45 U.S.C. § 546)

5. Plaintiffs and Intervenor are common carriers by rail.

6. Defendant, The Police Jury of St. Charles Parish, State of Louisiana, is a political subdivision of the State of Louisiana. In November of 1977 a St. Charles Parish Home Rule Charter was adopted and pursuant thereto the St. Charles Parish Council was substituted as the governing body, effective June 2, 1980. (I.C.G.R.R. No. 3)

7. On May 1, 1978, the Police Jury officially adopted Parish Ordinance No. 66–3–334 which makes it a crime for any person to operate any freight or passenger train on any railroad track within the parish at a speed in excess of 25 miles per hour.[1]

8. Although the ordinance became effective on June 1, 1978 (Railroads' Exhibit 1), the parties concede that no attempt was made by parish officials to enforce the ordinance or to interfere with plaintiffs' normal operations or with the speed of their trains which traveled through the Parish of St. Charles.

9. In early April of 1980, plaintiffs received a letter dated March 26, 1980 from the Parish Administrator advising that warning signs consistent with the ordinance were being posted and that the ordinance would be enforced. (Railroads' Exhibits 2, 2A). Upon receipt of the letter, plaintiffs filed this action seeking to have the ordinance declared unconstitutional and to enjoin its enforcement.

10. The evidence reflects that the Illinois Central operates trains, running between Chicago, Illinois and New Orleans, Louisiana, on two tracks which travel through St. Charles Parish. One is approximately 10 miles in length running along Lake Pontchartrain and the other is a 14 miles stretch along the Mississippi River. (I.C.G.R.R. 3 and 4); Railroads' Exhibits 3, 3A and 3B). The maximum speed instituted by the railroad on the lake track, North of Skip, Louisiana is 79 mph for passenger and 50 mph for freight trains. South of Skip, the maximum speed limit is 60 mph for passenger and 40 mph for freight trains. All trains on the river track travel at a maximum speed of 40 mph (I.C.G.R.R. No. 1, p. 12) except in heavily populated areas such as Prospect Street in Good Hope, Louisiana (10 mph) and Apple St. (25 mph).

---

1. Railroads' Exhibit 1, the pertinent portions of the ordinance read as follows:
   "It shall be unlawful for any person to operate any locomotive or train or cause or permit the same to be operated on any railroad tracks within the limits of the Parish of St. Charles at a speed in excess of twenty-five (25) miles per hour."

"Whoever violates the provisions of this ordinance shall, upon conviction, be condemned to pay a fine of One Hundred Dollars ($100.00), or be imprisoned for not more than thirty (30) days in the parish prison, or the sentence may include both fine and imprisonment, in the discretion of the Court."

**1176**

11. Southern Pacific operates its trains on a single track running from New Orleans to Houston, Texas, approximately 15.-47 miles of which is located in St. Charles Parish. (Railroads' Exhibits 3A, 3B and 3C)

It operates daily, 1 passenger train between New Orleans and Los Angeles, California and 9 freight trains. Its passenger trains travel at a maximum speed of 80 mph for passenger and 40 mph for freight trains. (Testimony of Harold David Fisher, Supervisor of Lafayette Division, Southern Pacific Transportation Company)

12. Missouri Pacific operates 18 trains at a speed of 50 mph on tracks which traverse approximately 17.4 miles through St. Charles Parish. (Mo.Pac. No. 1, No. 2 and No. 3)

13. The parties stipulated that the Louisiana and Arkansas Railway Company operates 3 northbound and 3 southbound freight trains over 11.3 miles of track in St. Charles Parish and that its main line runs parallel to Airline Highway over swamp land. (See La. & Ark. No. 1; Railroads' 3 and 3A)

14. The tracks over which plaintiffs and intervenor's trains travel through St. Charles Parish are either Class 3 or Class 4.

15. Intervenor, National Railroad Passenger Corporation, was created in 1970 by Congress (45 U.S.C. § 501 et seq.) to provide fast, comfortable and efficient intercity rail passenger services. It operates its passenger trains, known as Amtrak, in 45 states and 2 Canadian provinces. It contracts with various railroad companies such as Illinois Central (I.C.G.R.R. No. 2) and Southern Pacific (SPTCO No. 6) to move its trains (45 USC 562). Amtrak runs 20 passenger trains through St. Charles Parish each week. Illinois Central operates Amtrak trains Nos. 58 and 59 from Chicago, Illinois to New Orleans, Louisiana while Southern Pacific operates Amtrak trains No. 1 (City of New Orleans) and No. 2 (Sunset Limited) from New Orleans to Los Angeles, California. (Testimony of Alton L. Clark, Director of Operations for Amtrak and an expert in Railroad Passenger Operations)

16. The Parish of St. Charles, Louisiana is a sparsely inhabited area. The evidence reflects that the majority of the miles of railroad track in the parish operate through largely uninhabited areas, including swamp land. (Railroads' Exhibits 3, 3A, 3B and 3C). The 1980 Census lists the population of the parish at 37,430 and the largest city or town does not exceed 7,500 persons. (Railroads' Exhibit No. 6).

17. Presumably the parish's objective in passing the ordinance was to protect the health, safety and welfare of its citizens by minimizing the risk of train derailments and grade crossing collisions. However, no investigation was made or expert assistance was sought by the Police Jury prior to its passage. I find that the Police Jury had no basis for concluding that a 25 mph speed limit throughout the entire parish would prevent accidents and enhance the safety of its citizens. On the contrary, the evidence demonstrates that such a speed limit would tend to increase rather than decrease the number of grade crossing collisions and train derailments.

18. The evidence reflects that the Illinois Central track running along the lake has 4 private crossings with locked gates and no public crossings. (I.C.G.R.R. No. 5; Testimony of L.R. Stearns). The river track has 32 crossings; the public crossings are protected with cross bucks or flashing lights while the private crossings are protected by manual gates, crossing guards, crossing bucks or no protection at all in full compliance with applicable Louisiana law. (I.C.G.R.R. No. 5, Testimony of L.R. Stearns).

19. The Southern Pacific track has 8 private and 8 public crossings. All public and most private crossings are protected by flasher lights, gates, bells, wig wags or cross bucks. (SPTCO Nos. 3, 3A; Testimony of Harold David Fisher).

20. From 1971 to 1981, Illinois Central experienced 25 grade crossing accidents in St. Charles Parish, including 1 fatality and 7 injuries. All accidents occurred while the

train was traveling at a speed of 30 mph or less. (I.C.G.R.R. No. 6A). In that same period, Illinois Central had 24 derailments, 16 of which occurred while the train was traveling at a speed of 25 mph or less. (I.C.G.R.R. No. 6B) (Testimony of L.R. Stearns).

21. Mr. Clark testified that Amtrak experienced one accident in St. Charles Parish in the last 10 years. This occurred when the driver of a truck failed to stop and crossed in front of an Amtrak train traveling at a speed of 68 mph.

22. Statistics compiled by the Federal Railroad Administration for the years 1976 through 1979 demonstrate that approximately 73% of railroad crossing accidents occur at train speeds of 30 mph and that approximately 35% of railroad/vehicle crossing collisions occur when the vehicle runs into the train. (Railroads' Exhibits 7, 7A, 7B and 7C)

23. Both Edward F. Lind, an expert engineer, and Alton L. Clark, expert in railroad passenger operations, testified that studies show that when trains are known by the local populace to be traveling at higher rates of speed, the citizens have a tendency to obey warning devices at crossings. However, when trains travel at lower speeds, resulting in occupation of the crossing for a longer period of time, there is a tendency on the part of drivers of vehicles to attempt to "beat" the train across the crossing. (Testimony of P.N. Crabtree, Railroad Operations Expert employed as Superintendent by Missouri Pacific)

24. The evidence also demonstrates that due to harmonic roll and track/train dynamics, the effect of reducing train speed to 25 mph or less actually increases the likelihood of railroad car derailments (Testimony of Edward F. Lind; Railroads' Exhibit No. 8) and grade crossing collisions. (Testimony of Alton Clark)

25. The speed of both freight and passenger trains traveling through St. Charles Parish is set by timetables established by the operating railroads. Among the factors considered in establishing speed are safety considerations, the classification and condition of the tracks, the condition of the terrain, the length of the cars and tracks, the weight of the freight, and various train-track dynamic studies, the need to furnish adequate, efficient and inexpensive service to customers not only within the Parish of St. Charles but throughout the North American continent and the contractual requirements placed on railroads providing passenger services by the Railroad Passenger Service Act of 1970 (requiring that railroads average a speed of 55 mph for passenger service). (Testimony of William J. Hardlennert, Director of Auditing Division, Illinois Central Railroad Co.; Harold Davis Fisher; Alton L. Clark; and Edward F. Lind)

26. If the ordinance were to remain in effect, the evidence establishes that the reduction in speed would seriously impede the efficient operation of railroads nationwide; the time for plaintiffs' trains to pass through the Parish would be doubled; plaintiffs' ability to comply with their contractual obligations to furnish rail service to their customers would be seriously impaired; plaintiffs would lose current and future customers to their competitors because of the delay in furnishing services; train operations would be disrupted; time schedules would be awry and the failure to meet connecting air, sea, and land carrier schedules would be increased as well as the likelihood that plaintiffs would not be able to meet regular work schedules in accordance with Union agreements. (Testimony of Alton Clark; William J. Hardlennert; Harold David Fisher; Ben C. Symmank, Jr., Manager of Sales Administration, Southern Pacific; MOPAC No. 3)

27. Additionally, the evidence clearly demonstrates that should the ordinance remain in effect, the additional costs incurred by the railroads and ultimately placed on the consumer would be considerable. Alton Clark testified that Amtrak, now operating at a significant deficit, would have to hire additional employees at an additional cost of approximately $40,000.00 per year; that approximately 8,000 gallons of additional fuel would be consumed at an annual cost

of approximately $9,000.00; and that because the cost would be prohibitive and competition fierce, Amtrak could not survive. Similar testimony was given on behalf of Southern Pacific (Testimony of Eric Wilson, Transportation analyst and Harold David Fisher), Illinois Central (William J. Hardlennert, Director of Auditing), and Missouri Pacific (Charles D. Bowan, Manager of Economic Research, MOPAC No. 3 and No. 4).

28. The United States government has legislated in the area of railroad safety, track condition, speeds over various classes of tracks, the handling of hazardous materials, track structure, roadbed conditions, the inspections of track and roadbeds and various other matters pertaining to the operation of both freight and passenger trains, not only in the Parish of St. Charles but throughout the United States.

29. Based upon the weight of the evidence, I find that the total effect of the challenged ordinance as a safety measure in reducing accidents is so slight or problematical as to not outweigh the national interest in providing an adequate, economical and efficient railway service. Although the ordinance is local in character, enforcement would seriously impede and materially restrict the free flow of commerce among the states, resulting in irreparable harm and damage to the railroads. Such an ordinance is an unconstitutional interference with, and a burden upon, interstate commerce.

30. Accordingly, I find that Ordinance 66–3–334 is null and void and defendant is permanently enjoined from enforcing the provisions thereof.

31. On May 1, 1978, the date Ordinance 66–3–334 was adopted, The Police Jury was the official governing body of St. Charles Parish. Subsequent thereto, St. Charles Parish adopted a home rule charter plan of government. Pursuant thereto, the St. Charles Parish Council became the governing authority of the parish.

32. Trial of this matter commenced on March 31, 1981. After two days of testimony, on April 1, 1981 at 8:50 p.m., the St. Charles Parish Council adopted Emergency Ordinance 81–4–1 which repealed Ordinance 66–3–334, effective immediately.

33. Contrary to defendant's contentions, I find that the repealing ordinance was not an emergency ordinance and thus, the offending ordinance was not validly repealed.

34. Article IV, Section B. 3. b. of the Home Rule Charter specifies that before passage of any ordinance, notice of a public hearing must be published in the official parish journal and,

"No ordinance may be adopted at the same meeting at which introduced unless declared an *emergency ordinance* . . ." (Emphasis supplied).

35. Defendant concedes that no notice was given or public hearing held, contending that Ordinance 81–4–1 is an emergency ordinance. An emergency ordinance as outlined in Article IV, Section E of the Home Rule Charter, is one enacted to "meet a public emergency affecting life, health, property or public safety . . ."

36. Here, the ordinance had been in effect from the date of its passage, May 1, 1978, until April 29, 1980, the date the Parish was enjoined from enforcing the ordinance. Repeal of an ordinance limiting the speed of trains to 25 mph can hardly be interpreted as a public emergency. No sudden or unexpected event took place which created a temporarily dangerous condition which necessitated immediate action. The Parish Council cannot defeat the provisions of its charter requiring notice and a public hearing by declaring an emergency where none exists.

37. Assuming arguendo that Emergency Ordinance 81–4–1 was validly enacted, I find that this fact does not render this case moot. Voluntary action by the Parish Council during the course of trial on the merits is suspect. No evidence was introduced to show that the offending ordinance would not be re-enacted.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction and venue is proper. 28 U.S.C. § 1331; 28 U.S.C. § 1332.

2. The Commerce Clause of the United States Constitution grants to Congress the power "to regulate Commerce . . . among the several States." Article 1, Section 8, Clause 3 of the United States Constitution.

3. Although states and local governments may regulate matters of local concern that incidentally affect interstate commerce without violating the Commerce Clause, *H.P. Hood & Sons, Inc. v. Dumond,* 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949), they are prohibited from passing legislation which substantially affects the free flow of such commerce. *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945); *Seaboard Airline Ry. Co. v. Blackwell,* 244 U.S. 310, 37 S.Ct. 640, 61 L.Ed. 1160 (1917); *Southern Ry. Co. v. King,* 217 U.S. 524 at 533, 30 S.Ct. 594 at 596, 54 L.Ed. 868 (1910); *White v. The St. Louis & S.F. Ry. Co.,* 44 Mo.App. 540 (1891); *Banks v. B & O R.R. Co.,* 145 N.E.2d 350, 76 Ohio Law Alex. 83 (Ct.Com. Pleas 1957).

4. Congress passed the Federal Railroad Safety Act (45 U.S.C. § 421 *et seq.*) in 1970. Its purpose was to establish nationally uniform laws relating to railroad safety in all areas of railroad operations. (45 U.S.C. § 434; *Iowa City-Montezuma R.R. Shipper's Assn. v. U.S.,* 338 F.Supp. 1383 (D.C. Iowa 1972); *Chicago Transit Auth. v. Flohr,* 570 F.2d 1305 (6th Cir.1977); *Consol. Rail Corp. v. Pa. Pub. Util.,* 536 F.Supp. 653 (ED Pa.1982).

5. However, in expanding the scope of federal rule making authority, Congress permitted states to continue regulating in the area of essentially local safety hazards provided the regulations are not incompatible with any federal law and do not unduly burden interstate commerce. 45 U.S.C. § 434; *Donelon v. N.O. Terminal Co.,* 474 F.2d 1108 (5th Cir.), *cert. den.,* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973); *National Assn. of Reg. Utility Com'rs. v. Coleman,* 399 F.Supp. 1275 (M.D.Pa.1975), *aff'd,* 542 F.2d 11 (3rd Cir.1976).

6. Maximum allowable speeds have been established by the Federal Railroad Administration. 49 C.F.R. 213.9 provides that on class 4 tracks, the maximum allowable operating speed for freight trains is 60 mph while it is 80 mph for passenger trains. On class 3 tracks, 40 mph for freight trains and 60 mph for passenger.

7. In 1970, Congress passed the Rail Passenger Service Act, (Amtrak) 45 U.S.C. § 501 *et seq.* Its purpose was to provide a "modern, efficient, intercity railroad passenger service . . ." in order to alleviate transportation congestion on the highways and airways. 45 U.S.C. 501. Although Congress has passed no legislation specifically limiting the minimum speed of trains, it established certain goals for Amtrak. In 1981 one of the goals was to implement train schedules which provide a systemwide average speed of at least 60 miles per hour. 45 U.S.C. 501a. as amended in 1981.

8. In determining the validity of state regulations affecting interstate commerce, the United States Supreme Court in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) stated the general rule as:

> "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits . . . If a legitimate purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and whether it could be promoted as well with lesser impact on interstate activities."

9. Although the challenged ordinance regulates evenhandedly, its effect on interstate commerce is unconstitutionally burdensome, in violation of the Commerce Clause, and any contribution to railroad safety is minimal. *Southern Pacific Co. Inc. v. Arizona, supra.*

10. Emergency is "a sudden occurrence or exigency, implying imminent danger which leaves no time for deliberation, or a sudden or unexpected necessity requiring speedy action; . . . it is a sudden or unexpected event which creates a temporarily

dangerous condition usually necessitating immediate or quick action. *New Orleans Fire Fighters Assn. v. N.O.,* 204 So.2d 690, 695 (La.App. 4th Cir.1967); *See Smith v. Town of Vinton,* 209 La. 587, 25 So.2d 237 (1946).

11. Voluntary cessation of illegal conduct does not render a case moot unless it is demonstrated that there is no reasonable expectation that the wrong will be repeated and intervening events must have completely eradicated the effects of the conduct. *Country of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1970).

12. An issue is not deemed moot if it is capable of repetition yet evading review. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911).

13. Let judgment be entered in favor of plaintiffs, Southern Pacific Transportation Company, Missouri Pacific Railroad Company, Illinois Central Gulf Railroad Company, and Louisiana & Arkansas Railway Company and intervenor, National Railroad Passenger Corp. and against defendant, St. Charles Parish Police Jury, permanently enjoining and restraining defendant from enforcing Ordinance No. 66–3–334 and declaring said ordinance null and void.